<hr />

## Coulston's Estate.     Jarman's Appeal.

161        151
202       ¹125

*Decedents' estates—Claim for domestic services—Presumption of payment—Rebuttal—Evidence.*

A claim against a decedent's estate for domestic services for three and one half years at the rate of six dollars per week will not be sustained where the only witness for claimant is her daughter, who testifies that claimant only received one hundred dollars from decedent for her work, and that she had no other means of support. The presumption of payment periodically, from the custom in domestic service, is not overcome in such case.

A finding of fact by an auditing judge confirmed by the orphans' court in banc will not be disturbed by the Supreme Court except upon very clear proof of mistake.

Argued March 26, 1894.     Appeal, No. 275, Jan. T., 1894, by Annie E. Jarman, claimant, from decree of O. C. Phila. Co., April T., 1892, No. 493, dismissing exceptions to adjudication in estate of Jesse C. Coulston, deceased. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Adjudication of executor's account.

At the audit, appellant presented a claim for $1,154.19 for domestic services rendered to decedent from March 23, 1887, to Sept. 1, 1890, at six dollars per week.

Claimant's daughter testified in part as follows:

" We left him September 1, 1890.  I heard mother once ask why he did not pay her.  He paid her $50.00 about Oct. 19, 1889. He paid her $50.00 again after that.  I heard her ask him frequently for money.  He said he had not the money, but as soon as he sold some property he would pay her.  When we moved mother asked him to settle with her.  He said he could not do it; he had not the money.  She asked him then to pay half, if he could not pay all.  He said he was trying to sell a house on Ingersoll street, and as soon as he got the money he would pay.  He wanted mother to stay.  He told her she had done all she promised to do.  We went there three times afterwards.  He still said he had no money.  He said : ' I intend to pay you.'  He said to me : ' My dear child, I would not cheat your mother.  She has been too good to me.' "

The adjudication was as follows by ASHMAN, J. :

" The claim rested solely upon the testimony of a daughter of the claimant, who states that the decedent engaged her mother as housekeeper at wages of $6.00 weekly, and agreed also to board her and provide her with a servant to assist her, assuring her at the same time that ' he had full and plenty to eat.'  The daughter was to have her own room, but was to pay her own board.  These rather liberal terms were accepted by the claimant.  Mr. Coulston, however, did not board her, except during the first day, and he did not furnish her with a servant.  On the contrary, he marketed for himself, and she cooked his meals. These could not have been elaborate.  His diet, according to the witness, was oatmeal and milk, ' although he sometimes had a potato, and sometimes, but very seldom, a little bit of fish.'

" The claimant remained in his house, doing all that was required of her as a maid of all work, three years and seven months, at the end of which time her wages amounted to $1,070, and upon which two payments of fifty dollars each had been made.  She did not claim to have brought any furniture to the house, nor to have paid at any time for coal or gas consumed by her.  The house was a large one, containing thirteen rooms.

" [This evidence falls short of the measure of proof which experience has shown should be required in a claim like the present.  The usage is to pay household wages periodically, and a legal presumption has grown out of that custom.  The claimant has not undertaken to rebut the presumption.] [1]

So far as her evidence goes, her only means of subsistence, outside of the $100 she received on account, were derived from the earnings of her daughter, a young girl, who was sometimes out of employment.   Yet, if the evidence is truthful, she gave her whole time and labor towards keeping decedent's house in order, and she provided her own food for nearly four years, and in all that time received less than four months' wages.   The daughter testified that her mother left the decedent's services against his urgent request that she should remain with him. We can hardly doubt this, if the preceding facts were as represented ; few men would willingly part with a servant who worked for years without pay, and found herself in addition.

" The necessity, however, which compelled the claimant to leave the decedent was not strong enough to induce her to sue him.   In point of fact she was even more lenient after that event than ever before ; because she appears to have contented herself with calling upon the decedent three times for her money in the sixteen months which preceded his death.   The auditing judge refrains from alluding to the testimony which was produced against the claimant.   [He rejects the claim because the proof in its support failed to make out a prima facie case."]  [2]

Exceptions dismissed in following opinion by HANNA, P. J.:

" After a careful examination of the testimony, we think the auditing judge properly disallowed the claim for alleged services as housekeeper.   There is no evidence that claimant performed the duties of a housekeeper for the decedent, but what she did perform was the work and labor of an ordinary domestic.   And it is incredible she would remain in the employ of testator from March 23, 1887, until Sept. 1, 1890, three years and six months, and receive only the sum of $100 in payment of wages.   Furthermore, it is difficult to believe that the claimant would be so inert and regardless of her claim as to take no measures for its collection from Sept. 1, 1890, until after testator's death, which occurred Jan. 19, 1892, sixteen months after she left his house.   Testator was possessed of considerable property, and abundantly able to pay all his debts.   And now, after his death, his estate is called upon to pay a claim for servant's wages amounting to over $1,100.   Without referring to the cases upon the subject, it is sufficient to say that, when a

claim of this character is presented, suspicion is at once aroused, and it must be supported by clear and satisfactory evidence before it can be allowed payment.    In this case, the testimony in support of the claim is meager and unsatisfactory, and is that of a single, uncorroborated witness, the daughter of the claimant.    And all the facts and circumstances developed discredit the bona fides of the claimant.    If her claim be just, she has no one to blame for its loss but herself." .

*Errors assigned* were (1, 2), dismissal of exceptions, quoting them.

*John K. Andre, Henry F. Walton* with him, for appellant, cited: Eldred v. Hazlett, 33 Pa. 307; Eby v. Eby, 5 Pa. 435; Morrison v. Funk, 23 Pa. 421; Reed v. Reed, 46 Pa. 239; Gregory's Exrs. v. Com., 121 Pa. 611.

*D. Stuart Robinson* and *W. Alex. Robinson*, for appellees, not heard, cited: McConnell's Ap., 97 Pa. 31.

PER CURIAM, April 16, 1894:

It is so entirely incredible that a domestic servant, having no other means of support but her wages, would or could remain in such service for three and a half years, and receive only one hundred dollars on account of her service, that both the auditing judge and the court in banc rejected the claim of the appellant as being insufficiently proved.    The auditing judge heard the witnesses and had the opportunity of observing the manner and character of their testimony.    He rejected the claim because the proof in its support failed to make out a prima facie case.    In this conclusion he was confirmed by the decree of the orphans' court, and we regard this finding as we would the verdict of a jury or the report of a master or auditor upon questions of fact, not to be disturbed except upon very clear proof of mistake.    We find no such proof in the case; on the contrary we agree that the proof is far short of the kind that is required to sustain such a claim.

Decree affirmed and appeal dismissed at the cost of the appellant.