Elizabeth S. Edgecomb, Appellant, *v.* Sarah E. Buckhout, as Administratrix, etc., Respondent.

Plaintiff, an unmarried woman, entered into the service of W., defendant's intestate, as a housekeeper, and to render such other services as should be required of her, under an agreement that she was to be compensated for her services by certain specified provisions in his will. Plaintiff having received and accepted an offer of marriage, notified W. thereof, stating to him her willingness to carry out and continue the performance of her contract, and that her proposed husband was entirely willing she should do so. W. refused to receive her services as a married woman, and discharged her soon after she married. In an action upon the contract, *held*, that the mere fact of a contemplated marriage, or the marriage itself, did not necessarily as matter of law disqualify plaintiff from rendering the services contemplated in the agreement; and so, that the question as to whether the marriage afforded ground for plaintiff's discharge was properly submitted to the jury.

It appeared that W. was a man of wealth, and that his establishment was conducted on a lavish scale of expenditure. Plaintiff called M. as a witness, who testified that she had conducted boarding houses of the highest class in the city of New York, had hired many housekeepers and paid them their wages, and that their services were fairly worth the amount paid, which was stated. This testimony was received under objection and exception. *Held*, no error.

Said witness also testified that she had seen plaintiff at various times doing sewing of all kinds and mending for W. The witness was then asked and permitted to answer as to the value of such services, assuming that

they were in each month of about the same proportion as when named by the witness. This was objected to, among other things, on the ground that the complaint merely set forth the employment of plaintiff as a .housekeeper, and this did not include plaintiff's services as a seamstress. *Held,* untenable.

Defendant appealed from an order denying a motion for a new trial, made upon the minutes of the judge, and also from the judgment entered on the verdict. The General Term reversed the judgment. Its order was upon plaintiff's motion amended, so as to show that the reversal was upon exceptions alone, and the order denying a motion for a new trial was affirmed upon the facts. *Held,* that the questions reviewed by the General Term upon appeal from the order denying a motion were not before this court, and as to them it had no jurisdiction, and as it appeared that the reversal of the judgment was upon questions of law only, they were reviewable here.

*Edgecomb* v. *Buckhout* (83 Hun, 168), reversed.

(Argued May 27, 1895; decided June 11, 1895.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 10, 1894, which reversed a judgment in favor of plaintiff entered upon a verdict, and also reversed an order denying a motion for a new trial, and granted such motion.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Daniel B. Thompson* for appellant. No available exception was taken by defendant's counsel. (*Merritt* v. *Campbell,* 79 N. Y. 625; *Nay* v. *Curley,* 113 id. 575; *McGean* v. *M. R. Co.,* 117 id. 219.) The question as to whether the marriage of the plaintiff made it practically impossible for her to continue to perform such services as she agreed to perform as housekeeper for the decedent, is clearly a question of fact, and the trial justice committed no error in denying the motion to dismiss the complaint or in refusing to direct a verdict for the defendant. (*Justice* v. *Lansing,* 52 N. Y. 323; *Stokes* v. *Johnson,* 57 id. 673; *Hackford* v. *N. Y. E. R. R. Co.,* 53 id. 654; *Meade* v. *Parker,* 111 id. 262.)

*Louis O. Van Doren* for respondent. The rule is well settled in this state that if the master for good and sufficient

cause discharge the servant before the expiration of the term of service, or if the servant, without good cause, quits service before the end of the term, he can recover nothing for the part of the term past nor for the future. (*Turner* v. *Kouwenhoven*, 100 N. Y. 119, 120; *Lacy* v. *Getman*, 119 id. 109; *King* v. *St. John*, 9 B. & C. 896; *Stoney* v. *F. T. Co.*, 17 Hun, 579; *Huntington* v. *Claffin*, 38 N. Y. 182; *Spain* v. *Arnott*, 2 Starkie, 256; *B. F. Co.* v. *Glasscock*, 36 Alb. L. J. 43; *Foot* v. *Sabin*, 19 Johns. 158; *Lomer* v. *Meeker*, 25 N. Y. 361.) This respondent has practically never had the benefit of a review of the facts of the case as far as they relate to the propriety of the verdict. (*Ehrichs* v. *DeMill*, 75 N. Y. 370; *Harris* v. *Burdett*, 73 id. 136; *Snebley* v. *Conner*, 87 id. 218; *Kennicutt* v. *Parmalee*, 109 id. 650; *Williams* v. *R. R. Co.*, 127 id. 643.)

Peckham, J. The plaintiff brought this action to recover for services as housekeeper, which she alleged in her complaint herein she had performed for one Eckford Webb under an agreement that she should perform them up to the death of Mr. Webb, he agreeing with her that she should be compensated for such services by a provision in his will, by which she would have a life estate in the house No. 78 Rush street, in the city of Brooklyn, $5,000 in cash and $3,000 in value of railroad bonds. The plaintiff alleged the performance of the contract on her part, the death of the other party to the agreement, Mr. Webb, and his failure to make any provision for her in his will. It was also alleged that the reasonable compensation for the services actually performed by the plaintiff would be the sum of $18,000, no part of which had been paid to the plaintiff, and she demanded judgment therefor against his administratrix, with interest from October 1, 1893, the date of the death of Mr. Webb.

The defendant put in an answer denying the agreement, alleging that the plaintiff had been fully paid for all services rendered by her to the deceased, and also alleging that the plaintiff, long prior to the death of Mr. Webb, had herself

terminated, canceled, discharged and abandoned the contract. Other defenses were set up in the answer which are not necessary to state.

It appeared upon the trial that the deceased, Mr. Webb, was a man about sixty years of age, very large in person and somewhat helpless on that account. Sometime in 1881, he engaged the plaintiff, who was then an unmarried woman of about forty years of age, to become his housekeeper and to perform such other services as might be required of her from time to time. The agreement was that the plaintiff should perform such services for Mr. Webb up to the time of his death, for which she was to be compensated as stated in the complaint. Pursuant to the agreement the plaintiff then entered into the service of Mr. Webb and remained in his service between eight and nine years. She proved the character of the services which she rendered, which were not alone those pertaining to an ordinary housekeeper, but included services of a personal nature, necessitating constant attendance upon Mr. Webb. They included also the purchase of supplies for the house and table, the hiring of servants, the superintendence of their work, paying the bills of the establishment, attending to the sewing and mending and doing many other services which were stated in detail by the plaintiff and her witnesses. Sometime in the spring or early summer of the year 1889, the plaintiff left the service of Mr. Webb under circumstances which she stated in her testimony. They were in substance that upon informing Mr. Webb that she had received an offer of marriage from her present husband, Mr. Edgecomb, and asking his advice as to her acceptance of it, he stated that he had no advice to give and became quite angry. The conversation was continued regarding the question of her ability to render to Mr. Webb the services which she had theretofore rendered, if she married Mr. Edgecomb, and Mr. Webb said that she would not be able to render him such services, that her husband would not permit it and that he would not have any married man around his house. The plaintiff replied that she had spoken with Mr.

Edgecomb in regard to the matter and that he was perfectly willing that she should continue to render the same services that she had before rendered and that unless he were willing that she should do so she would not marry him. In addition she said she would if Mr. Webb preferred it take a house with her husband and give to Mr. Webb the best rooms in it and render to him the same services she had heretofore rendered him; or if he chose she would have Mr. Edgecomb come to the house and she would continue to give the same services to Mr. Webb under those circumstances; or she would have Mr. Edgecomb remain where he was and she would in that case continue to render the services until Mr. Webb died, and that during the little space of a wedding tour which she would like to take, she would have her stepmother come and perform the same services for Mr. Webb that the plaintiff had been performing. The testimony shows that it was not an alternative demanded on the part of the plaintiff that the contract should be modified, from that which was originally made. The evidence shows a statement on her part of her willingness to stand by the contract that she had made and a statement that her proposed husband was entirely willing that she should do so, and then she offered at the option of the deceased other propositions in relation to taking a house, etc., which have just been stated.

The result of it was that Mr. Webb discharged her and gave her three weeks in which to leave his house. It is plain and the jury have found that the discharge was given by Mr. Webb solely for the reason that he refused to accept the services of plaintiff as a married woman, and his notification to her that she might have three weeks in which to leave was based solely upon his determination to refuse at all events the services of the plaintiff as a married woman. He stated that he would not have a married woman, and that he wanted an unmarried woman to perform the services which he required.

The plaintiff left the house pursuant to the notification of Mr. Webb and soon thereafter was married to Mr. Edgecomb, and the two left for Europe. They were gone several years and

returned a short time prior to Mr. Webb's death, in October, 1893, and soon after that event the plaintiff brought this action to recover for the value of the services performed by her during the time that she was in his employ.

The learned judge upon the trial submitted to the jury the question as to what the terms of the agreement between Mr. Webb and the plaintiff were. If they found that the agreement was as testified to on the part of the plaintiff, the second question submitted to them was that relating to her performance of the agreement thus proved. He stated to the jury that the contention on the part of the plaintiff was that she had been ready, willing and able at all times to continue to serve Mr. Webb, and that the relations between them were severed not by any wrongful act on her part, but by some wrongful act on his part, and she claimed that his discharge of her was wrongful in the sense that her contemplated marriage did not constitute any just ground in and of itself for her discharge.

The learned judge then said to the jury: " If the effect of the marriage of the plaintiff with Mr. Edgecomb was such as to render it practically impossible for her to continue thereafter to render the services as housekeeper which were contemplated by the agreement between her and Mr. Webb, this contract was ended by her act, and as the contract is an entirety, she lost all right to recover in the action. * * *

" She testified that the husband was entirely willing to allow her to remain there just as she had remained before, to allow her to do just what she had done before, to perform all those various services which have been narrated with so much detail in your hearing during this trial, and you are asked to conclude, therefore, that there was no necessary obstacle to the continuance of that relation arising out of the new relation which she was about to form and did form with the gentleman who became her husband. In other words, you are told that this new relation was not incompatible with the continuation of the old one, and that the husband had no claims or rights

as to his wife which rendered it improper, if not impracticable, for her to go on and do what she had been doing before. * * *

" I leave it to you as a question of fact to determine whether or not the effect of the marriage was to render it practically impossible for the plaintiff to continue to render the same services as she had rendered before. * * * If you shall find that the effect of the marriage she was about to contract took it out of her power to perform the contract, then she cannot recover at all. If such was not the effect of the marriage, and if you shall find that it was practicable for her to go on and do just what she did before, and that Mr. Edgecomb, her husband, was willing that she should go on and do just as she did before, then Mr. Webb was not in a position to break off the relations till something actually occurred which made it certain that she could not go on.

" Of course, he was under no obligations to make any change in his household to accommodate the husband. He was under no obligation to admit him there, either as the spouse of this lady or as a visitor for any purpose whatever, or to sacrifice one moment of the time which the plaintiff engaged should be devoted to him in order that she might devote it to her husband ; but he was not justified in breaking off the relation if it were practicable that the relation should continue as it had continued and as it was intended to continue by the contract, if she did everything to render such a result possible."

Several written questions were submitted to the jury, which they answered. They found the agreement as testified to on the part of the plaintiff ; they found that Mr. Webb dismissed plaintiff from his service because she became engaged to Mr. Edgecomb ; they found that the marriage of the plaintiff to Mr. Edgecomb did not make it practically impossible for her to continue to perform such services as she had agreed to perform as housekeeper for Mr. Webb, and that the plaintiff did not voluntarily leave or abandon the service of Mr. Webb upon entering into her marriage engagement. Also that the plaintiff had not been paid for such services as she rendered

to Mr. Webb. They also found that the fair and reasonable value of such services as the plaintiff rendered to Mr. Webb was $85 per month, and they found a general verdict for the sum of $8,330.

The defendant appealed to the General Term from the judgment entered upon the verdict, and that court held that the question respecting the right of the deceased to discharge the plaintiff should have been decided as a question of law by the trial court, and that as matter of law the marriage of the plaintiff wrought such a change in the plaintiff herself as to disqualify her from the performance of her contract with Mr. Webb, and that Mr. Webb was justified in construing her proposed marriage as a rescission of the contract on her part, and discharging her for that cause.

Treating the question as one of law simply, we are of opinion that the General Term erred in its conclusion as above stated. We agree that the services contracted for in this case were those entirely of a personal nature, admitting of no substitution of any other individual, either as master or servant. The master selected the servant and the servant chose the master. Submission to the master's will is the law of this contract, as it was of that in *Lacy* v. *Getman* (119 N. Y. 109–115). Of course the master's will must be lawful and reasonable, and of such a nature must be his orders, and a breach of the agreement to render such services as were therein provided for and intended in this case would be ample justification to the master for the discharge of the servant, the plaintiff herein. But we are of the opinion that the mere fact of a contemplated marriage, or the marriage itself, would not as matter of law render the plaintiff incompetent, or necessarily disqualified, to perform the services which had been contemplated in the agreement between the parties. The General Term is in error when the learned judge speaking for it says that the evidence showed the deceased Mr. Webb had contracted for the services of an unmarried woman. He had contracted for the plaintiff's services, and at the time she happened to be unmarried. But there was nothing in the nature

of those services which rendered it legally impossible for the plaintiff to perform them as a married woman, or which necessarily disqualified her from their performance upon her marriage. If her husband were entirely willing that she should perform them, and that she should remain in the house of Mr. Webb separated from her husband, he continuing to reside where he had resided up to that time, how can it be said as matter of law that this marriage necessarily rendered the plaintiff incompetent to perform her agreement? If, after the marriage had taken place, the deceased had found that the services of the plaintiff were not being rendered as they theretofore had been, on account of the fact that she had a husband who claimed any portion of her time and services, or who claimed or endeavored to exercise the right to be in the house of the deceased at any time, then there would have been justification for the discharge of the plaintiff by Mr. Webb. But so long as the plaintiff continued in the faithful performance of the agreement which she had theretofore entered into with Mr. Webb, the fact that the plaintiff had a husband would, under the circumstances, be wholly immaterial, provided, of course, that the husband claimed no right to and did not in fact come to the house of the deceased and made no claim for the presence or service of the plaintiff at his house or for her time. It is true that marriage is not only a contract but an institution, as said by the learned court below, and that it not only creates rights and makes obligations, but that it confers a status. But so long as the husband claims no rights arising from the marriage contract, and is on the contrary entirely willing that the wife shall continue as theretofore in the full performance, separated and apart from her husband, of her obligations to another, it cannot be said that the wife necessarily and simply by virtue of the marriage disables or disqualifies herself from performing her earlier agreement, and that as long as she does perform it in every respect as fully and completely as she ever did, and the husband claims and exercises no rights whatever over her or in regard to her other obligations or duties, the party with whom such

earlier contract has been made has no right to treat it as rescinded on the sole ground of the marriage.

It was not error, therefore, of which the defendant can complain that the trial judge left it to the jury to say whether the fact of the marriage of the plaintiff afforded ground for her discharge by the deceased, for it left the defendant, his administratrix, a chance for success which was not open to her if the question were to be decided as one of law. The single fact of the marriage, when considered with reference to the other facts, did not furnish such ground.

As the General Term reversed the judgment and granted a new trial and the plaintiff has appealed from such order and given the usual stipulation that in case of its affirmance judgment absolute shall go against her, the defendant urges that even if the General Term were in error on the ground above stated in granting the new trial, yet still the order can be maintained on the ground of the error of the trial judge in the admission of certain testimony which will now be considered. The defendant alleges that the trial court erred in allowing the witness, Mrs. Mann, to testify to the value of the services of a housekeeper. The witness testified she had been in the habit of hiring household servants for many years in the city of New York. She had been the proprietress of several boarding houses of the highest class where very rich people, as she said, were accustomed to board, and where everything had been conducted, as she described it, "in first-class style." She had during that time hired many housekeepers and paid them wages for their services, and she testified that their services were fairly worth the amounts she had paid to them. She also said that housekeepers in her employ never did any sewing, never did any purchasing, never did any paying of bills, never did any hiring or discharging of servants. It had been proved that such services had been performed by the plaintiff for Mr. Webb. The witness gave her opinion of the value of the plaintiff's services, not including her sewing as a seamstress; and she also testified that she had seen the plaintiff at various times doing sewing

of all kinds, making sheets and pillow cases, mending clothing of the deceased and doing other things of that nature, and she testified that such services, assuming they were in each month of about the same proportion as they had been when noticed by the witness, were worth $20 per month. The defendant objected to all this evidence in due time on the ground that it was incompetent and immaterial, and also on the ground that the witness was not shown to be an expert, and that the value of the services of the class of housekeepers engaged by the witness for work in such establishments as she conducted furnished no standard for measuring the value of the services of the plaintiff to the deceased Mr. Webb. It had appeared in evidence that Mr. Webb was a man of considerable means; that his establishment was conducted on quite a lavish scale of expenditures; that his table was of the best, furnished with wines and the best and earliest that the market afforded in the way of game, vegetables, fruit and other things; that he kept carriages and horses and lived, in fine, as a man of quite large means. It was also objected that the services of the plaintiff as a seamstress were outside of and beyond that which was alleged in the complaint, which merely set forth the employment of the plaintiff as a housekeeper, and that that was exclusive of any services of the nature of those of a seamstress, and, therefore, evidence of the value of such services was incompetent.

We are of opinion that these objections should not be sustained. The term "housekeeper" does not admit of any clear, accurate and arbitrary limitation as to the character of the services which are embraced within the duties of such a person. Those duties are not very strictly defined by such an expression. Generally speaking, we know that it has reference to services performed in the taking care of a house in connection with the inmates residing therein, but exactly what special and particular duties are to be regarded as embraced within the term must almost always be decided by the duties which are actually performed under the agreement as made. In this case the character of the duties was specifi

cally detailed by the plaintiff and by various witnesses, all of whom went at quite great length into a description of the same; and it is seen that the term housekeeper in fact embraced duties not limited by the mere control and taking care of the house itself. Probably it would be impossible to show the value of such services by any individual who had herself performed precisely the same kind of services for another individual situated exactly as was the deceased and in substantially the same neighborhood. Obviously all that the plaintiff could do in order to show the value of her services was to call those people who had been engaged in the hiring of individuals to do the same class of services in some respects, although not to the same extent or precisely of the same character as those which were performed by the plaintiff. For this purpose she called Mrs. Mann, who had been in the habit of hiring housekeepers to do such work as she described when on the stand, and not one of them had been hired to do all the services which had been performed by the plaintiff. It was competent to show that the housekeepers thus employed were paid a certain sum per month, and that their services were fairly worth the amount which was paid to them. The same may be said with regard to the value of the plaintiff's services as seamstress. Mrs. Mann knew the value of the services of such an individual engaged in substantially the same neighborhood and doing exclusively that kind of work; but, as the plaintiff did not confine herself exclusively to those duties, she did not earn as much in that capacity alone as did the hired seamstress, who devoted the whole of her time to that work. The witness assumed a certain proportionate time that the plaintiff gave to her work as a seamstress and gave as her opinion an amount which, as she thought, would be the fair value of the services thus performed. In this we see no error. It was, as we have said, the best that the situation permitted plaintiff to do; in other words, the best evidence that the nature of the case afforded, and, therefore, it was not incompetent, because it left the value of plaintiff's services as actually rendered somewhat indefinite and vague.

The defendant urges another ground for the affirmance of this order based upon the practice followed herein.   It seems that the order as first made by the General Term was one simply reversing the judgment and granting a new trial.   The action had been tried before a jury, and upon the coming in of the verdict a motion had been made to set it aside and for a new trial on the minutes of the judge.   That motion was denied and an appeal by defendant was taken from the order denying it as well as from the judgment entered upon the verdict of the jury.   Subsequent to the reversal of the judgment and upon affidavits of plaintiff's attorney and upon an order to show cause, the order of the General Term was, upon motion of the plaintiff, amended in such a way that the General Term reversed the judgment upon the exceptions alone, and it also ordered that the order of the trial court denying defendant's motion for a new trial should be, and it thereby was, affirmed upon the facts.   The defendant's counsel now contends, as we understand him, that the questions reviewed by the General Term and arising upon the appeal from the order denying defendant's motion for a new trial on the ground that the verdict was against evidence and for excessive damages should be regarded as before this court.   We are not authorized to exercise such jurisdiction.   If the order of the General Term had stood as it was originally made and an appeal had been taken to this court, we should have had to dismiss the appeal or affirm the order with costs, because it would not have appeared under such circumstances that the reversal of the judgment by the General Term was founded on questions of law only, the facts having been passed upon adversely to the then appellant. The General Term knew what grounds it took in reversing the judgment and granting a new trial, and upon application to it by the plaintiff, after notice to the defendant, it deliberately amended its former order and showed that it had passed upon the facts and affirmed the order denying the motion for a new trial, and that it reversed the judgment upon exceptions, or, in other words, upon questions of law only, the facts having been passed upon by it unfavorably to the defendant.

In this case, as in others, we can only review the questions of law arising upon the exceptions. (*Harris* v. *Burdett,* 73 N. Y. 136, 139 ; *Snebley* v. *Conner,* 78 id. 218 ; *Kennicutt* v. *Parmalee,* 109 id. 650 ; *Mickee* v. *Wood M. & R. M. Co.,* 144 id. 613.)

We think the trial judge committed no error prejudicial to defendant, and that the order of the General Term reversing the judgment and granting a new trial must be reversed and the judgment upon the verdict affirmed, with costs.

All concur.

Ordered accordingly.