## Taylor, Appellant, *v.* Beatty.

*Master and servant—Presumption of periodical payments—Wages—Housekeeper.*

A person is a servant within the ruling that her services were presumed to have been periodically paid where it appeared that after she had entered her employer's service she complained that the place was lonely, that he thereupon agreed to pay her at the rate of $5.00 a week for an indefinite term of service, that she remained in the employment for seven years, that she worked about the house, did the cleaning, tended the house, cooked occasionally, tended defendant's bar, helped to do washing and ironing, and nursed her employer when he was ill. In such a case it is immaterial that

the claimant was occasionally assisted by other servants, that the occupants of the house, except on rare occasions, consisted only of her employer and herself, and that certain of the witnesses spoke of her as a housekeeper.

The term housekeeper has reference to services performed in the taking care of a house in connection with the inmates residing therein, but exactly what special and particular duties are to be regarded as embraced within the term must always be decided by the duties which are actually performed under the agreement as made.

Where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant, for a considerable period after such service has terminated, the inference is, either that the wages have been paid, or that the service was performed on the footing that no payment was to be made.

Wages for domestic service are presumed to be paid at the periods customary at the time and in the neighborhood, and claims for such wages for an unusual length of time, and especially those not made until after the claimant has left the service must be supported by affirmative proof that they have not been paid.

In an action by a servant to recover weekly wages at the rate of $5.00 per week for over six years and six months' services, the plaintiff acknowledged that she had received $100. There was no evidence that she was the owner of any property, or had an income sufficient to support herself aside from her earnings as a servant. It appeared that the master kept a book account of his business transactions, and that he paid his debts. No demand was made by the plaintiff until nearly eleven months after she left the service. *Held*, that the evidence was not sufficient to rebut presumption of payment.

*Practice, C. P.—Affidavit of defense—Purpose of affidavit—Master and servant.*

The sole purpose of an affidavit of defense in the absence of a rule of court on the subject, is to meet the plaintiff's demand by the allegation of a sufficient legal defense, and thereby to prevent a summary judgment.

In the absence of a rule of court restricting a defendant on the trial of a case to the matter set up in the affidavit, the effect of an affidavit of defense cannot be extended to the admission of allegations in the statement not denied in the affidavit, nor of matters not averred in it.

In an action on an alleged contract of hiring as a housekeeper, an affidavit of defense denying the alleged contract and any indebtedness on account thereof, will not prevent the defendant in the absence of a rule of court on the subject, from showing payment under the pleas of non assumpsit and payment, although the plaintiff may have established at the trial the existence of a contract of hiring.

Argued Feb. 3, 1902. Appeal, No. 254, Jan. T., 1901, by plaintiff, from judgment of C. P. Montgomery Co., Oct. T., 1893, No. 70, refusing to take off nonsuit in case of Sarah Jane Taylor v. James Beatty, Administrator of Samuel Beatty, de-

ceased.   Before McCOLLUM, C. J., DEAN, FELL, BROWN and
MESTREZAT, JJ.   Affirmed.

Assumpsit for wages.   Before WEAND, J.

The facts are fully stated in the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently
refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Nicholas H. Larzelere*, with him *Gilbert Rodman Fox* and
*Muscoe M. Gibson*, for appellant.—The issue squarely presented
by the pleadings was, whether a contract, express in terms, was
made.   Decedent by his affidavit rebutted in the most emphatic
way, the presumption of payment.   Plaintiff offered " in evi-
dence the affidavit of defense as filed in this case as further
evidence of rebuttal of the legal presumption of payment dur-
ing the term of service."   It was admitted.   No question can
arise that it negatived the presumption of payment.   It was
properly offered and received for the purpose of rebutting the
presumption of payment :   O'Connor v. The American Iron
Mountain Co., 56 Pa. 234; Stockwell v. Loecher, 9 Pa. Superior
Ct. 241 ; Jacoby v. North British Ins. Co., 10 Pa. Superior Ct.
366.

It must be conceded under the testimony, that plaintiff was
more than a mere menial domestic.   She was a general house-
keeper and the other servants were under her and subject to her
orders, but, conceding she was bound by the rule laid down in
McConnell's Appeal and that line of cases, the facts were quite
sufficient upon all the questions involved, to be submitted to
the jury :  Gerz's Exrs. v. Demarra's Exrs., 162 Pa. 536 ;
Hughes's Estate, 176 Pa. 387 ; Rosencrance v. Johnson, 191
Pa. 532 ; Ranninger's Appeal, 118 Pa. 20.

*Montgomery Evans*, with him *Jacob V. Gotwalts*, *James B.
Holland* and *John M. Dettra*, for appellee.—Plaintiff was a serv-
ant and her wages are presumed to have been paid :  Coulston's
Est., 161 Pa. 151 ; McConnell's App., 97 Pa. 31 ; Carpenter
v. Hays, 153 Pa. 432.

When the affidavit has prevented a summary judgment, it

has performed its whole office, and is not before the court on the trial unless it is put in evidence, as an admission, against the party making it.    It does not in any way limit the defense to be made at the trial: Flegal v. Hoover, 156 Pa. 276 ; National Insurance Co. v. Brown, 128 Pa. 386 ; Carpenter v. Hays, 153 Pa. 432.

OPINION BY MR. JUSTICE MESTREZAT, March 24, 1902:

There are two questions in this case : (1) Was the plaintiff a servant within the ruling that her services were presumed to have been paid periodically, and (2) if so, was the presumption rebutted by the facts disclosed by the testimony in the case ?

1. Samuel Beatty, the original defendant in this action, lived in a rural part of Montgomery county, and kept a hotel there. The plaintiff entered his service on September 19, 1885, and left it on September 1, 1892.    She claims that he contracted to pay her compensation at the rate of $5.00 a week for an indefinite term of service.    She instituted this action during Beatty's life in the common pleas of Montgomery county, July 17, 1893, to recover $1,805, less $100 paid her on account, with interest from September 1, 1892.    He filed an affidavit of defense and the case was put at issue October 11, 1893, on the pleas of non assumpsit and payment.    Samuel Beatty died May 12, 1899, and in May, 1900, his death and the marriage of the plaintiff were suggested and the record was amended accordingly.    On March 11, 1901, the plea of non assumpsit infra sex annos was added and the case tried.    At the conclusion of the plaintiff's testimony, the court granted a compulsory nonsuit.    The learned trial judge subsequently refused to take off the nonsuit for the reason that the plaintiff's " case falls within that class in which it has been so often decided that servants' wages are presumed to be paid weekly or monthly ; and there was no evidence to take it out of the general rules."

The evidence on the trial was sufficient to establish a contract of hiring at the rate of $5.00 per week and to sustain the claim of the plaintiff that she was in the service of Samuel Beatty from 1885 until 1892.    But we do not agree with the plaintiff, that her services were of such a character that they were taken out of the rule that they were presumed to be paid weekly as the decedent agreed to pay them.    She alleges in her statement

that she was employed as a housekeeper. The witnesses speak of her as housekeeper and say that she had charge of the house. But when they detailed the labor she performed, it was quite evident that she was a domestic servant and her services were of that character. The decedent's home was a small country tavern, whose patrons were doubtless few and nearly all of those frequented the bar instead of becoming guests of the house. In the language of a witness the place was so very lonesome for the plaintiff that she didn't think she would stay. Another of her witnesses testified that the plaintiff " kept saying it was so lonesome, she was tired, she didn't think she would like it." After this statement to the decedent, he, as an inducement for the plaintiff to remain, " told her if she stayed he would give her $5.00 a week." This constituted the contract between the parties. Her witnesses testified that she worked about the house, did the cleaning, tended to the house, " she tended bar, she cooked and did everything that was necessary at the hotel for a housekeeper to do," helped to do the washing and ironing, nursed the defendant when he was ill and served drinks in the parlor and sittingroom of the house. Mrs. Mary Smith testified that the plaintiff " was housekeeper and done all the work, only what little bit I could do. Of course I was only a child. . . . She done all the cooking and all the work."

The testimony shows that the plaintiff performed the duties of a domestic or menial servant. Occasionally she was assisted by other servants but this did not change the character of the services performed by her. Such assistance merely lightened her labors but did not affect or change the nature of her services. It was a country house whose occupants, except on rare occasions, consisted of the plaintiff and the decedent. So few were the people who came to the house and her duties were so light that the plaintiff was very lonesome and didn't think she could remain with the decedent. It is apparent that there was no necessity for more than one servant at the house, and that the plaintiff, as the testimony shows, did the ordinary work of a house servant. It is the character of the services rendered and not the term applied to the person performing them that determines whether or not she is a servant within the rule that a servant's wages are presumed to be paid periodically. It is immaterial that the employee is called a

housekeeper. That term does not definitely define the duties of the servant, nor is its meaning sufficiently certain to exclude extrinsic evidence as to the services actually performed by the employee. One of the standard English dictionaries defines a housekeeper to be " a woman who oversees the work and servants in a house, either as a mistress or as an upper servant." As said by Mr. Justice PECKHAM in delivering the opinion of the court in Edgecomb v. Buckhout, 146 N. Y. 342, generally speaking, we know that the term housekeeper has reference to services performed in the taking care of a house in connection with the inmates residing therein, but exactly what special and particular duties are to be regarded as embraced within the term must almost always be decided by the duties which are actually performed under the agreement as made.

The English rule as to the presumption of payment of servants' wages, determined in Sellen v. Norman, 4 C. & P. 80, and Gough v. Findon, 7 Exch. Rep. 49, has been followed in this state. In the last cited case Baron PARKE states the rule as follows : " Where a person serves in the capacity of a domestic servant, and no demand for payment of wages is made by the servant for a considerable period after such service has terminated, the inference is, either that the wages have been paid, or that the service was performed on the footing that no payment was to be made." The presumption of payment rests upon the known fact, as said by PAXSON, J., in McConnell's Appeal, 97 Pa. 31, that in England, servants' wages, as a general rule, are paid at stated periods, and it is entirely immaterial whether such periods are weekly, monthly, or yearly, and upon the further fact that a servant rarely leaves the service of an employer and remains away for months or years, without a settlement of some sort with his or her employer or at least a demand for payment. The same facts are recognized as existing in this country and this court has uniformly enforced the rule : Houck v. Houck, 99 Pa. 552 ; Carpenter v. Hays, 153 Pa. 432 ; Coulston's Estate, 161 Pa. 151.

2. To sustain a claim for services under circumstances similar to those in the case at bar, our decisions require the servant to show affirmatively that her wages have not been paid, thus rebutting the presumption of payment. In Carpenter v. Hays, supra, our Brother MITCHELL, speaking for the court,

says : " Wages for domestic service are presumed to be paid at the periods customary at the time and in the neigborhood, and claims for such wages for an unusual length of time, and especially those not made until after the claimant has left the service, must be supported by affirmative proof that they have not been paid." There was no evidence in the present case to rebut the presumption that the plaintiff's wages were paid weekly as required by her contract. In her statement, she admits that she received $100. This sum paid her wages for twenty weeks or five months, leaving unpaid, according to her contention, wages for over six years and six months' service. There is no evidence that she was the owner of any property or had an income sufficient to support herself, aside from her earnings as a servant. On the other hand the presumption of payment is strengthened by the facts disclosed by the evidence. The deceased kept a book account of his business transactions, but it contained no reference to a claim in favor of plaintiff. It did not appear that he was unable to pay his debts, nor was it shown that he refused to pay the plaintiff. " He was a man who collected everything that was due him and paid what he owed." No demand for the payment of her wages was made by the plaintiff before she brought this suit, which was nearly eleven months after she left the decedent's service. Being without adequate means of support so far as the evidence discloses, it was incumbent upon her to explain why she failed to bring her action to trial for a period of over seven years and then not until her employer had been removed by death and his estate left defenseless against her alleged claim. Her silence for so many years demands of the plaintiff an explanation before she be permitted to enforce her claim against the estate of the decedent.

It is, however, contended by the learned counsel for the appellant that the presumption that the plaintiff's wages were paid was overcome by the decedent's affidavit of defense, in which it was averred that he did not contract with the plaintiff to become his housekeeper, but failed to deny the allegation in the statement of payment of small sums on account of her services. But this position is not well taken. It overlooks the object of an affidavit of defense, the sole purpose of which is, in the absence of a rule of court on the subject, to meet the

plaintiff's demand by the allegation of a sufficient legal defense and thereby to prevent a summary judgment. There is no rule of court in Montgomery county restricting a defendant on the trial of a case to the matter set up in the affidavit. Hence the effect of an affidavit of defense in that county cannot be extended to the admission of allegations in the statement not denied in the affidavit, nor of matters not averred in it. Here the statement alleges as the basis of the plaintiff's claim a contract of employment as a housekeeper on September 19, 1885, at a compensation of $5.00 per week. Failing to sustain that averment, the plaintiff could not recover. The affidavit denies that the defendant contracted with the plaintiff to serve him as housekeeper as alleged in the statement, and avers that she never worked for him in that capacity, and that the affiant did not owe the plaintiff the amount she claims for such services nor any part thereof. This affidavit was clearly sufficient to prevent the entry of a summary judgment and consequently served the purpose for which it was filed. Had the defendant been living and on the trial his testimony was inconsistent with the allegations in his affidavit, it could have been used as an admission against him. Like any other inconsistent statement, it would be competent evidence to contradict him and impeach his credibility. But, if the contract of employment be conceded, there is nothing in the affidavit that can be construed as evidence rebutting the presumption of a periodic payment of the plaintiff's wages. It is simply and properly a denial of the alleged contract of hiring and of any indebtedness of the defendant to the plaintiff on account thereof. That the plaintiff on the trial established a contract did not change the effect of the affidavit nor convert it into evidence of nonpayment of her wages. Notwithstanding the affidavit, the defendant, after proof of an agreement of hiring, was still at liberty, if he desired, to show payment of the plaintiff's services. The issue was made up on the pleas of non assumpsit and payment, and therefore the evidence of payment was admissible under the pleadings.

The services of the plaintiff were those of a domestic, and under the conceded facts of the case they are presumed to have been paid weekly in accordance with the contract. This presumption not having been rebutted, the learned trial judge committed no error in directing a verdict for the defendant.

The assignments are overruled and the judgment is affirmed.