# Shuman's Estate.

*Appeals—Decedents' estates—Insolvent estate—Heir at law.*

1. An heir at law of an adjudicated insolvent estate, has no standing to appeal from the allowance of a creditor's claim against the estate, where, even if the claim were disallowed, the balance would not be sufficient to pay the other creditors. The heir in such a case is not a "person aggrieved" within the meaning of the Act of March 29, 1832, P. L. 190.

*Decedents' estates—Claim against estate—Evidence—Successive accounts—Practice, O. C.*

2. The fact that the creditor of a decedent's estate has not been able to prove by competent testimony his claim at the audit of the first account of an executor, will not prevent him from offering such proof, if he has secured it, at the audit of a second account of the executor.

*Appeals—Assignments of error—Question not raised in assignments.*

3. Where a question of law was not raised in a lower court, or in the assignments of error, or in the statement of the question involved, it will not be considered in the appellate court.

*Evidence—Admissions—Decedents' estates.*

4. An admission made by a creditor of a decedent's estate that his claim would not exceed a certain amount, does not estop him from presenting and proving by competent testimony his real claim. Such ad-

mission will merely militate against his credibility and the bona fides of his account.

5. Testimony as to admissions are to be received with great caution and scrutiny.

*Decedents' estates—Claim against—Payment—Periodical payments.*

6. The doctrine of the presumption of periodical payments to servants for domestic services is not applicable to a superintendent of lumbering operations employed at a stipulated price per day, who was not paid at stated intervals, and who had various other dealings with the decedent apart from the contract of employment.

Argued Dec. 5, 1910. Appeal, No. 23, Oct. T., 1910, by John W. Shuman, from decree of O. C. Northampton Co., dismissing exceptions to auditor's report in estate of Charles Shuman, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to auditor's report. Before STEWART, J.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in overruling exceptions to auditor's report.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellant.— The testimony shows that the services of Schafer which he performed at the stave mill consisted of giving orders, taking the time of the men and helping himself to erect the engine and boiler house, which were all services consistent with those performed by ordinary laborers or servants, and nothing done by him according to the testimony elevated him to that confidential relation which distinguishes the servants controlled by the presumption and those who are exempt from the presumption of periodical payments: Taylor v. Beatty, 202 Pa. 120; Webb v. Lees, 149 Pa. 13; Hayes' Est., 17 Pa. Superior Ct. 412.

The admissions of Schafer were conclusive against him: Mueller's Est., 159 Pa. 590; Truby v. Seybert, 12 Pa. 101.

*A. Mitchell Palmer,* with him *F. W. Edgar,* for appellee. —The appellant has no standing in the court: McAllister's

587, (1911).]        Arguments—Opinion of the Court.

App., 59 Pa. 204; Stineman's App., 34 Pa. 394; Mellon's App., 32 Pa. 121; Craig's App., 38 Pa. 330; Sharp's App., 3 Grant, 260; Gallagher's App., 89 Pa. 29.

The doctrine of the presumption of periodical payment for domestic services, rendered the decedent, does not apply under the facts of this case: Taylor v. Beatty, 202 Pa. 120; Schrader v. Beatty, 206 Pa. 184.

OPINION BY MORRISON, J., March 3, 1911:

The two reports of the auditor, confirmed by the court below, sustained legal claims against the estate of Charles Shuman to the amount of $31,186.48. The balance of the estate for distribution was $10,353.91. With some corrections and allowances the dividend allowed the creditors by the final distribution was 33.2 per cent. The appellant is a son and heir of the deceased.

The first question prominently brought to our attention by counsel for appellee is the right of the appellant to maintain this appeal. The Act of assembly of March 29, 1832 P. L., 190, 213, under which the appeal is taken, provides: "Any person aggrieved by a definitive sentence or decree of the orphans' court, may appeal from the same to the Supreme Court," etc. It is difficult for us to see how the appellant is legally aggrieved. If he honestly believes that the appellee's claim is unjust he may be aggrieved in his feelings but that is not within the meaning of the act of assembly. The estate of the decedent being all converted into money and distributed and only paying 33.2 per cent of the creditor's claims, what harm did it do appellant when the auditor and the court below found that the appellee had a legal claim against the estate of $338.59, and allowed him a dividend thereon of $112.41. If we should sustain this appeal and send the case back to have the distribution corrected, the only possible result would be a small increase in the dividend of the other creditors. It is beyond all question of doubt that the appellant could not receive one cent out of the estate of his father, as an heir.

The law is well settled that an accountant cannot appeal from a decree distributing the fund in his hands or directing him to pay over a distributive share. He is not a person aggrieved: McAllister's App., 59 Pa. 204. The same rule applies to an executor: Stineman's App., 34 Pa. 394, to an assignee or trustee: Mellon's App., 32 Pa. 121; Craig's App., 38 Pa. 330, and to an administrator: Sharp's App., 3 Grant, 260; Gallagher's App., 89 Pa. 29. The obvious reason for the above rule is, that having no financial interest in the fund, the accountant cannot be aggrieved by the decree of the lower court as to how that fund shall be distributed. Surely an heir of an adjudicated insolvent estate has no more interest in the fund than the accountant.

No creditor filed any exceptions to the allowance of appellee's claim, nor, so far as the record shows, is any creditor now complaining of the allowance of said claim. We are of the opinion, on the undisputed facts, that the appellant was not legally aggrieved by the distribution of his father's estate and therefore he ought not to be permitted to maintain this appeal.

However, we have examined the record with care and we are of the opinion that the auditor and the court below did not err in sustaining the appellee's claim to the amount stated in the distribution. At the first hearing before the auditor the appellee presented his claim, among other items which were allowed, for services as superintendent for Charles Shuman about his lumbering operations. The learned auditor found from the testimony that the appellee did render such services to the decedent in his lifetime and that the services were worth $2.00 per day, but for the reason that appellee failed to prove by competent evidence the number of days he was employed his claim in that respect was not then allowed to share in the fund for distribution. In passing upon that question the learned court below said: "It may be that on a second hearing, the claimant will be able to prove, by competent testimony, the number of days he was at work," and in the

decree the court said: "Corrections indicated above to be noted by the accountant and corrected by the auditor when the second account is referred to him."

The fund for distribution at the second audit was a different fund from the one distributed by the auditor at the first hearing, and it seems obvious that the failure to prove the number of days claimant worked for the deceased was no bar to the claimant to present his additional proof and have his claims allowed out of the second fund.

In Cowan v. Gonder, 5 Phila., 15, Judge HARE said: "The better opinion would seem to be, that an adjudication by an auditor appointed to examine and report upon the accounts of an executor or administrator is a judgment simply in rem, which, like other judgments of the same nature, is limited to the fund with reference to which the adjudication is made, and does not bind or conclude the parties in any subsequent controversy which may arise between them with reference to any fund or thing which although of the same nature is not the same." While the above authority is not binding upon us we consider it a correct statement of the law upon the question. But be that as it may the present appellee's claim was not rejected at the first audit and his right to present the same at the second audit was expressly saved to him by the learned court below. Therefore we conclude that the appellee had the right to present his claim for $2.00 per day as superintendent at the second audit and the learned auditor specifically found a certain number of days' labor at $2.00 per day in his favor and after deducting sums which had been paid to the appellee by the decedent, allowed him the balance. Upon this question there was an abundance of testimony to sustain the auditor's finding and that finding having been approved by the court below in a careful opinion and decree we will not disturb it. Moreover, there was no exception to the auditor's report on the second distribution raising the question of the conclusiveness of the adjudication by the first distribution. It is alleged that counsel for the estate and for the heir, appellant, never

contended in the court below, that the adjudication of the first distribution was res adjudicata of appellee's claim, and no assignment of error raised that question in this court. That question not having been raised in the lower court, or in the assignments of error, or in the statement of the question involved, it will not be considered in the appellate court: Bousquet's Est., 206 Pa. 534.

Counsel for appellant contend with much earnestness that appellee admitted to himself and Mr. Charles Shuman that his whole claim against the decedent's estate would not exceed $140.00. Mr. Paff, appellant's counsel, made himself a witness and testified to that effect and put himself in conflict with appellee's version of the fact. It is very clear from appellee's testimony that he denied making any such admission and claimed that what he did say was in substance that he could not give the amount of his account at that time and that he was to make up his statement and send it to him. This matter being in dispute it was for the auditor who saw and heard the witnesses to determine their credibility and the weight of their testimony and to find the facts, and it does not appear at all clear that appellee intended to convey the idea that the estate did not owe him to exceed $140.00. In such a case it is very easy to misunderstand admissions alleged to have been made by a party. It has been often held that testimony as to admissions should be received with great caution and scrutiny. In McCarty v. Scanlon, 187 Pa. 495, ARCHBALD, J., whose opinion was affirmed by the Supreme Court, said: "The defense which is interposed in this case is based largely upon admissions alleged to have been made by the plaintiff to Margaret Scanlon, the defendant, and the rule of law is that such evidence should be received with great caution and scrutiny. There is no doubt about that."

But suppose the appellee did tell the appellant and Mr. Paff that he thought his account would not amount to more than $140.00, and that he subsequently found that it was much more, such admission would not estop him

from presenting and proving by competent testimony his real claim. It is true that such admission, if believed, might militate against his credibility and the bona fides of his account. But when all of his testimony was presented it would be for the auditor to find as a fact how much, if anything, the estate was indebted to the appellee. And we here remark that the auditor seems to have held the appellee to the production of ample testimony to sustain his disputed claim. There is only one other question presented which we care to comment upon. That is the doctrine of the presumption of periodical payments to servants for domestic services. Counsel for appellant contend vigorously that such presumption arose in regard to appellee's claim as superintendent and that the burden was cast upon him to overcome that presumption by clear and convincing testimony. The first answer to that is, that appellee proved by several witnesses that he was not an ordinary servant but that he was employed as superintendent at a stipulated price per day. That he was a man of experience in lumbering operations. That he served as superintendent at the mill and in the woods and that he furnished teams and hired teams of others to do Shuman's work. That he boarded Shuman's carpenters at his own house, purchased out of his own funds supplies for Shuman; consulted lawyers in reference to Shuman's titles and paid their fees; boarded Shuman's mules, and sold him rye, oats, hay and corn; he even sold some of the finished product of Shuman's mills and lumbering operations and gave the latter credit for what he received for lumber and railroad ties. He also kept the time of Shuman's employees and turned it in to Shuman who paid the men through him. It is shown and conceded that appellee was not paid regularly at stated intervals but that Shuman paid him cash in February, 1905, $125; May, 1905, $35; and June 1906, $100. It would seem to us that the course of dealing between Shuman and appellee rebuts whatever presumption may have arisen by reason of the custom of employers in the neighborhood of paying their employees

at regular intervals.  In Taylor v. Beatty, 202 Pa. 120, Mr. Justice MESTREZAT, speaking for the court, said (p. 124): "It is the character of the services rendered, and not the term applied to the person performing them that determines whether or not she is a servant within the rule that a servant's wages are presumed to be paid periodically."

We have carefully examined the record and considered the elaborate argument of counsel for appellant, and the authorities therein cited, and, on the facts controlling appellee's claim we are not convinced that any of the assignments of error raise reversible error.  And we all agree to dismiss the assignments of error, affirm the decree, and dismiss the appeal at the costs of appellant.