AVALON CONSTRUCTION CORPORATION, Appellant, *v.* KIRCH HOLDING CO., INC., Respondent, Impleaded with Others.

138

(Argued February 16, 1931; decided March 31, 1931.)

*Joseph J. Schwartz* and *Herman Schwartz* for appellant.
Plaintiff's failure to advance the money did not constitute a breach of the contract, and the court erred in denying the motion to dismiss the counterclaim. (*Noble v. Higgins*, 214 App. Div. 135; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63; *Rosenthal Paper Co.* v. *National Folding Box Co.*, 226 N. Y. 313; *Giventer* v. *Antonofsky*, 209 App. Div. 679; *Shepman Mortgage & Realty Corp.* v. *Sussman*, 147 App. Div. 25.) Defendant-respondent was not entitled to recover damages, because the agreement for the loan specifically provided for other consequences of appellant's failure to make the loan. (*Read* v. *Fox*, 119 App. Div. 366; *Mechanics Bank* v. *City of New York*, 164 App. Div. 128.) The damages awarded exceed

the amount actually sustained. The court erred in admitting evidence upon, and adopting improper measures of, damages. (*B. E. & C. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.,* 123 N. Y. 316; *Hoch* v. *Braxmar,* 109 App. Div. 209; *Mawhinney* v. *Millbrook Woolen Mills,* 231 N. Y. 290; *Travelers Ins. Co.* v. *Pomerantz,* 246 N. Y. 63; *Taggart* v. *Western Union Telegraph Co.,* 198 App. Div. 366; *Chapman* v. *Fargo,* 223 N. Y. 32; *Reilly* v. *Connors,* 65 App. Div. 470; *Malex Realty Co.* v. *Hageman,* 121 Misc. Rep. 676; *Cuyler Realty Co.* v. *Teneo Co.,* 196 App. Div. 440; 233 N. Y. 647.)

*Arthur Morris* for respondent. The agreement of the plaintiff to advance the $20,000 being part of another transaction and an inducing cause to the defendant to purchase the premises, the defendant is entitled to recover general damages for breach of contract. (*Miller* v. *H. J. & M. I. Realty Corp.,* 188 N. Y. Supp. 446; *Bohemian* v. *Northern,* 120 N. Y. Supp. 134; *Hoch* v. *Braxmar,* 109 App. Div. 209; *Tolchinsy* v. *Schiff,* 47 Misc. Rep. 371; *Griffin* v. *Calver,* 16 N. Y. 489; *Industrial* v. *Tod,* 180 N. Y. 215; *Wallingsford* v. *Kaiser,* 191 N. Y. 392; *Carleton* v. *Lombard,* 19 App. Div. 297; 162 N. Y. 628; *Meyer* v. *Kinney,* 137 App. Div. 541; *Ehrenworth* v. *Stuhmer,* 229 N. Y. 210; *Palmer* v. *Osband,* 108 Misc. Rep. 313.)

KELLOGG, J. Pursuant to the terms of a written contract, the plaintiff, on April 26th, 1928, conveyed certain premises to the defendant. The conveyance was expressly made subject to a first mortgage lien of $103,400, and a second mortgage lien of $23,750. The defendant conveyed and transferred to the plaintiff other premises and securities, in part consideration for the conveyance to it, so that, at valuations agreed upon, there remained unpaid upon the purchase price the sum of $7,048. It was agreed that the payment of this sum should be secured by a third mortgage upon the premises conveyed. Accordingly, a bond was executed and

delivered by the defendant to the plaintiff, conditioned upon the payment by the former to the latter, not of $7,048, but of $27,048. This is explained by the mortgage securing the bond, which, in compliance with the contract of sale, contained a provision, whereby it was agreed that on April 11th, 1929, after the second mortgage became due, and the defendant had reduced the same by paying $3,750, the plaintiff would pay off the balance of $20,000, and cancel the mortgage. The purchase-money mortgage, given to secure a bond of $27,048, would then secure the payment to the plaintiff, not only of the balance of the purchase price but of the loan made to take up the second mortgage. Interest to become payable was to be reckoned on $7,048 until April 11th, 1929. Fifteen hundred dollars was to be paid upon the principal on that date. Thereafter, the $20,000 having been advanced, interest was to be reckoned on $25,548, the new principal thus to be created. This principal was to be paid off, at the rate of $1,500 quarter-annually, until April 11th, 1934, arrived, when the balance should become payable. The transaction thus agreed upon, if carried out, would have secured to the defendant the privilege of paying off $20,000 in installments during a period of six years rather than the whole sum within a year.

On the 11th of April, 1929, the defendant had reduced the second mortgage to the principal sum of $20,000 as agreed. Nevertheless, the plaintiff neglected and refused to advance that sum to take up the mortgage and cancel it. Foreclosure of that mortgage was then begun and the defendant was compelled to borrow money at various banking houses, on short term credits. With money so obtained, it paid off the second mortgage. Default having been made upon the plaintiff's mortgage, this suit was begun to foreclose it and recover the sum of $5,548, at which sum the principal then stood. The defendant counterclaimed for damages accruing through the breach of the plaintiff's promise to advance the sum of $20,000.

In support of its reply thereto the plaintiff reasoned that the obligation to make the payment never matured, owing to the fact that the defendant had not reduced the first mortgage by paying installments of principal thereon of $2,200, falling due during the year 1928. It was a sufficient answer thereto that neither the mortgage nor the contract contained a term conditioning the plaintiff's obligation to advance $20,000 upon a prior payment by the defendant of installments due on the first mortgage, and the trial court properly so found. The trial court proceeded to find further that the defendant's damage through the plaintiff's breach was $10,587.50; that after deducting from this sum with interest added the amount due on the plaintiff's mortgage for principal and interest, there was a balance due the defendant of $5,321.12. Accordingly, it decreed a cancellation of the plaintiff's mortgage and granted judgment for the defendant in the last-named amount.

When money is loaned, or goods sold on credit, and the debt is not paid when due, obviously the delay occasions the creditor nothing more than a temporary loss of the use of his money. For this loss, the law compensates the creditor with an award of no greater or other sum than legal interest. (Sedgwick on Damages, vol. 2, § 622-b; Williston on Contracts, vol. 3, § 1410.) Logically, a prospective borrower, whose contract for a loan has been breached, should stand in no better case. His money loss is likewise nothing else than the loss of its use for a limited period. However, the interest charge which would measure that loss merely cancels the interest charge which would measure the loss of the lender, had the loan been made, so that, if a balance be struck, no loss is found. Consequently, reason compels, and all authority supports the conclusion that a breach of contract to make a loan, standing by itself, involves no legal damage. (Williston on Contracts, vol. 3, § 1411; Sedgwick on Damages, vol. 2, § 622; Mayne on Damages,

p. 175; Sutherland on Damages, vol. 1, § 76; *Western Wagon & Property Co.* v. *West*, L. R. [1892] 1 Ch. 271; *South African Territories, Ltd.*, v. *Wallington*, L. R. [1897] 1 Q. B. 692; *Manchester & Oldham Bank* v. *Cook & Co.*, 49 L. T. 674; *Prehn* v. *Royal Bank of Liverpool*, 21 Law Times, 830; *Gooden* v. *Moses Bros.*, 99 Ala. 230; *Turpie* v. *Lowe*, 114 Ind. 37; *Bixby-Theirson Lumber Co.* v. *Evans*, 167 Ala. 431; *New York Life Ins. Co.* v. *Pope*, 139 Ky. 567; *Thorp* v. *Bradley*, 75 Iowa, 50.) "Upon breach of a contract to loan money, if no special damage is shown, the recovery is only nominal. For though by the contract the plaintiff would receive the amount of the loan, it would be saddled with an obligation of exactly equal amount, so that the profit of the contract would be nothing." (Sedgwick on Damages, *supra.* § 622.) "Breach of a contract to lend money for whatever period at the current rate of interest, or at whatever rate of interest for no definite time, involves no legal damage, unless consequential damages are recoverable." (Williston on Contracts, *supra*, § 1411.) "The utmost liability of a person who breaches his contract to loan money, in the absence of notice of special circumstances, is for the increased interest the other person was obliged to pay." (Sutherland on Damages, *supra.*) As will be seen from these quotations, the law is kinder to a borrower than to a lender. The latter, for the loss of use of his money, through a delayed payment by his debtor, must content himself with interest. The prospective borrower, however, may recover the special damage which an inability to obtain the money, under the peculiar circumstance of his case, has actually caused him. (*South African Territories, Ltd.*, v. *Wallington, supra; Western Wagon & Property Co.* v. *West, supra*. See, also, other cases cited.) In the first of the two cases last named, LOPES, L. J., said: "The borrower may go into the market the next day after breach, and get the money without incurring any loss, or he may not be able to get it without suffering

a loss, in which case the measure of the damages is the loss he suffers " (p. 695).

The case of *Duckworth* v. *Ewart* (2 Hurlstone & Coltman, English Exch. Rep. 129) possesses features of interest upon this issue. Rutledge was the owner of lands, subject to a building society mortgage for £4,300, and to a second mortgage of £350 owned by the defendant. He conveyed the same to the plaintiff in fee, subject to the building society mortgage, with power to mortgage the same for £5,000, pay off the building society mortgage, reimburse himself for advances made, pay up the defendant's mortgage and turn over the surplus to Rutledge. The defendant covenanted that he would execute all assurances necessary for the plaintiff to execute his trust. The plaintiff expended £1,100 upon the property; procured an agreement from the building society to accept £4,100 upon its mortgage; and obtained the promise of a loan of £5,000 to be secured by a mortgage on the premises. The defendant refused to execute a writing consenting to the new mortgage. As a result the loan was refused; the building society foreclosed; and the property was sold for £4,510, a sum just sufficient to pay its mortgage. The court, in an opinion by BRAMWELL, B., said: " Each claim is based on the same fallacy. What was the loss at the moment of the breach of contract? Let us see what difference it at once caused in the plaintiff's position. Had the contract been fulfilled he would have had an estate subject to a mortgage of 5,000£, and in debt to him 200£, in all 5,200£, with other liabilities. By the breach of contract, he had an estate subject to a mortgage of 4,100£ and in debt to him 1,100£, in all 5,200£, and subject to the same further liability. His position therefore was the same, less the expense of the abortive mortgage." In our case, if the plaintiff had advanced the money, the defendant would have owned the identical property, subject to a first mortgage for $103,400, and a second mortgage for

$25,548. Instead, because of the breach, he owns the property subject to the same first mortgage of $103,400, a second mortgage of $5,548, and owes the banks $20,000. His position is the same except for actual expenses paid. Nor has he lost his property by foreclosure as in *Duckworth* v. *Ewart* (*supra*). There Baron BRAMWELL put this case and made this comment: " The present case seems to me the same as though I were to say, ' I will always give you twenty shillings for a sovereign,' and the promissee sends me one by a child: I break my promise, the child returns with the sovereign, shows it to other children, and it is stolen or lost. Should I be liable? Certainly not." So here the defendant has the same property; he owes in connection therewith the same indebtedness; therefore, instead of having twenty shillings he has a sovereign; nor has the sovereign been lost as in the case put by Baron BRAMWELL.

The court, as one base for its conclusion that the defendant had suffered a loss of $10,587.50, through the plaintiff's breach of promise to make the loan, found that the defendant's real estate had sustained, in consequence thereof, a shrinkage in value of $10,000. The property now has mortgages against it of $108,948. Had the loan been made, the mortgages against it would have stood at $128,948. That it would be more valuable under the latter condition than it is under the former; that the intrinsic value of any real estate is affected by the presence or absence of mortgages; these propositions are so unthinkable that reasons to refute them require no expression. As an alternative base for the same conclusion of loss, the court found that expenses totalling more than $10,000 had been incurred, or must be, to make the defendant whole.

One element of the alternative base was an item of $6,642.48, the estimated cost of obtaining a loan of $25,548, to take up the plaintiff's third mortgage, the $20,000 loan obtained by the defendant at the banks,

and to place a second mortgage upon the premises for the total amount. The expense was estimated on the basis of a twenty-five per cent bonus for obtaining the loan and a one per cent charge for brokerage. The assumption that there can be a uniform market price for the procurement of a second mortgage is an obvious fallacy. The bonus necessary to be paid, even to unscrupulous usurers, would doubtless vary in every instance, depending upon the intrinsic value of the property, the extent of prior liens, and the urgency of the borrower's needs. This was recognized even by the witnesses for the defendant. More than that, the defendant has never been required to make the payment. Nor is there any likelihood that it will be forced to make it through resort to usurers to obtain a loan. Already banks have loaned it the necessary $20,000 without other charge than interest; have renewed the obligations; and, so far as the evidence shows, will renew them indefinitely. If the situation changes and it becomes reasonably necessary for the defendant to raise money through the instrumentality of a further bond and mortgage, we are not prepared to say that a necessary payment made to obtain such a loan will not be recoverable herein.

Another item, reckoned in the bill of expense occasioned the defendant, is an item of $3,000 for legal services. This item chiefly consists of charges made or to be made by the defendant's present attorney for services in conducting this litigation. The legal charges which the plaintiff must pay to the defendant in this action, if any, will be comprehended in the defendant's bill of costs. There is no basis for including them in the damages which the defendant may recover. Other items appearing in the expense account may or may not be recoverable. Upon a new trial the defendant's recovery should be confined to expenses naturally and necessarily resulting from the plaintiff's breach of its promise.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgments reversed, etc.