BECKWITH HAVENS, Plaintiff, *v.* ROCHESTER ROPES, INC., Defendant.*

Supreme Court, Special Term, Queens County, December 11, 1942.

* Affd. 266 App. Div. 672, motion for leave to appeal to Court of Appeals denied 266 App. Div. 692.

*Weller, Rogers, Bergen & Rochford* for defendant.

*Olcott, Havens, Wandless & Stitt* for plaintiff.

CUFF, J. Motion by defendant for summary judgment. Plaintiff entered into a written contract with defendant, the salient clause of which provides: "In consideration of the contracts you [plaintiff] have established and are establishing in the aircraft industry and in consideration of your supporting our [defendant's] company's sales efforts in this field through correspondence, personal calls and otherwise as indicated, we are prepared to employ you on the following basis." That contract was dated November 4, 1940. On June 13, 1942, plaintiff, who had been a reserve officer of the United States Navy, commenced active duty in that service. There is no denial by either party that between November 4, 1940, and June 13, 1942, plaintiff and defendant performed the contract. There is no question of unpaid commissions up to June 13, 1942.

When plaintiff entered active naval service he wrote defendant to that effect. Correspondence ensued in which defendant maintained that plaintiff was disqualified to continue as its representative, while plaintiff insisted that no legal barrier impeded him. Plaintiff spells out of that letter-writing that

defendant discharged him wrongfully on August 7, 1942. (See letter, dated August 6, 1942, from defendant's attorneys to plaintiff annexed to defendant's reply affidavits.) Defendant did instruct plaintiff that it would no longer consider him as its representative. (See letter, dated June 16, 1942.)

There are two causes of action. The first is for commissions earned between June 30, 1942, and August 7, 1942. The second is for $100,000 for wrongful discharge. Plaintiff regards himself as a part-time employee working under a written contract.

Defendant, on this motion, contends that the contract was terminated and dissolved on June 13, 1942, when plaintiff became an active officer in the Navy, because beginning on that date he could no longer prosecute private business interests. By law, defendant urges, plaintiff could not function, while in fact his usefulness to it was at an end.

An officer or enlisted man in the Navy may be punished, even by death, for disobedience of orders of superiors. (U. S. Code, tit. 34, § 1200, Article 4, ¶ Second.) That means that in the event he were commanded to take action inconsistent with the mutual interests of the contracting parties, plaintiff would have to serve the Navy and desert the defendant. There is no claim that plaintiff has been restricted, as yet, by the Navy Department in his extracurricular activities. It is a fact, however, that his active service has rendered him amenable to the rules, regulations, and directions of the Navy Department, as well as to the commands of his superiors. (Bureau of Naval Personnel, Manual, " General, Administration, and Organization — All Classes," chap. 1, § 4.)

A newly acquired status by a contracting party, which status, by its nature, may or even should prohibit performance of the contract entered into, but which actually has not interfered up to that time, may not form the basis for the other party's assuming that the contract has been violated, terminated, cancelled, or dissolved. There should be more than a possibility or probability of prevention of performance. There must be concrete interference. (*Edgecomb* v. *Buckhout,* 146 N. Y. 332.)

The other argument of defendant, that plaintiff's official status has rendered him useless to carry out his obligations under the contract, is based in part upon the rule that an officer of the Navy may not be engaged by an employer who supplies naval materials to the government. Such a practice, as early as 1896, was made unlawful and the offending officer was deprived of his navy pay. (U. S. Code, tit. 34, § 883 [Act of June 10, 1896, ch. 399, 29 U. S. Stat. 361; as amd. by Act of July

22, 1935, ch. 402, § 9, 49 U. S. Stat. 490].) That provision, in 1938, was made applicable to Naval Reserve officers while on active duty. (U. S. Code, tit. 34, § 855, effective June 25, 1938 [Naval Reserve Act of 1938, § 301].)

When, however, the Selective Training and Service Act of 1940 was adopted by Congress (U. S. Code, tit. 50, Appendix, §§ 301–318; 54 U. S. Stat. 885 et seq.) — the law by virtue of which the manpower of the United States was mobilized — the rigidity of the former peacetime laws and rules with regard to service men under contract in private industry was greatly relaxed. Evidently that drastic change of front was intended to soften the shock to our citizens in the necessary disruption of their business enterprises and in their speedy transition from peace to wartime service. Doctors, lawyers, small businessmen, industrial giants, craftsmen, and laborers, many of whom were serving under contracts, found themselves in uniform and subject to the orders of the Commander-in-Chief before they had time to adjust their private affairs. To make an exception for them was wise and helpful to military morale; to have done less for them would have been unjust. The Selective Service Act, repealing all other legislation inconsistent therewith, legalizes " the payment of compensation by any person, firm, or corporation to persons inducted into the land or naval forces of the United States for training and service under this Act, or to members of the reserve   *   *   *   forces now or hereafter on any type of active duty, who, prior to their induction or commencement of active duty, were receiving compensation from such person, firm, or corporation," (Selective Training and Service Act of 1940; U. S. Code, tit. 50, Appendix, § 303, subd. [f], 54 U. S. Stat. 885, § 3, subd. [f].) That provision covers this situation exactly.

The law does not forbid plaintiff to pursue his duties under the contract. It authorizes defendant to pay him any compensation he earns.

At some time there may be a conflict between plaintiff's duty to the Navy and his contractual obligation. If there is such a conflict it may not be decided as a matter of law; it presents an issue of fact. Likewise, it may not be decided as a question of law that because of his active duty as an officer in the Navy, plaintiff has been rendered useless as a representative of defendant under the contract. In the event that official duties or any other contingency curtail plaintiff's work on behalf of defendant pursuant to the contract, and as a result the sales fall off, the contract itself takes that situation into account.

If defendant deems plaintiff's identification with it to be detrimental to its business interests, that would have to be established as a fact.

The contract has not been terminated or ended by operation of law. There are issues of fact presented. The motion is denied.

It should be pointed out that defendant's position is in all respects wholesome and is not lacking in patriotism. Defendant makes no issue of any money earned by plaintiff before he entered upon active duty. Those commissions have been paid. Defendant manufactures rope used on airplanes. Its sales are to airplane manufacturers. Plaintiff was engaged to stimulate that business. Defendant draws the court's attention to the requirement that plaintiff must wear his uniform (Order of Secretary of Navy, in effect 1941), and that defendant will feel embarrassed to have its representative, clad in a naval officer's uniform, seek business in competition with others from firms selling their products to our government and its allies. It was right and proper for defendant to be cautious under the circumstances. Defendant was open to criticism and may still be. Defendant's action can in no way be regarded as an unfavorable reflection upon its interest in the nation's war effort or in those men who are contributing their services to accomplish victory.