David T. Gibbons, J.
Plaintiffs move for a summary judgment in this action instituted to recover damages by reason of defendant’s alleged breach of contract to lend money. Plaintiffs claim that on the 30th of April, 1963, they entered into a contract with James M. Clarke and his wife to purchase a one-family house at 41 Larry Drive, Commack, New York. The contract provided that it was subject to the purchasers’ obtaining a commitment for a mortgage loan in the sum of $15,700 for a term of 30 years at an interest rate of 5]/2% per annum. Thereafter an application was made to the defendant, Pilgrim Funding Corporation for a mortgage loan. The application does not appear as a part of the record in this action and is not included among the papers used on this motion for summary judgment. Plaintiffs contend that on or about May 24,1963, they received a commitment from Pilgrim Funding Corporation. A copy of the commitment is made part of the moving papers and reads as follows:
(Insignia) Federal Housing Administration Approved Lending Institution
PILGRIM FUNDING CORP. Approved F.H.A.— V.A. Lenders 211 Hempstead Turnpike West Hempstead, New York May 24, 1963
Mr. Anthony Zelazny
1045 Long Beach Road Re: Premises — 41 Larry Drive
South Hempstead, New York Commack, New York
Dear Sir:
We are pleased to advise you that the mortgage loan application made by the above purchaser has been approved in the amount of $15,700 term of 30 yrs Conv. at 5%% interest per annum. Monthly payments $89.15 for interest and principal, plus a sum equal to one twelfth of the annual charges for taxes, fire insurance premium.
Conditions:
1. The bond and mortgage be signed by Anthony Zelazny and Carol Mary Zelazny, his wife.
*178 2. Fire insurance required and extended coverage No. 4 is in the amount of $15,700. If new insurance is being written, policy must be present at the closing.
3. It is understood and agreed that a closing be effected no later than sixty days from the date of this letter, after which time this commitment shall be null and void.
4. This commitment is not in effect unless the enclosed copy is signed and returned to us within ten days together with $100.00 on account of closing expenses. We estimate your closing expenses will be $522.00 plus deposit on account of taxes, fire insurance premium which must be paid in cash by you at the time of closing.
5. Title report and Survey will be ordered by us, if not already ordered, as soon as this commitment is accepted.
6. Subject to compliance with laws, rules, regulations and/or directives of government body and/or agency controlling and/or affecting this transaction and approval by our attorneys of all closing papers.
7. Upon receipt of an acceptable Title Search and Survey, a closing date will be arranged.
File #10680/as
Mr. James M. Clarke "Very truly yours
James J. Malloy, Esq.
PILGRIM FUNDING CORP.
By s/Joseph G. McNally
Joseph G. McNally
as
ACCEPTED:_
It is stated in the plaintiffs’ moving papers that Anthony Zelazny signed the commitment letter and mailed it back to Pilgrim Funding Corporation, the defendant, with a check in the sum of $100. The cancelled check in the amount of $100 is incorporated in the plaintiffs’ affidavit in support of this matter. The moving party contends that pursuant to said contract of commitment the plaintiffs prepared to purchase the house, gave up their apartment for which they were paying a rental of $110 per month including gas and electricity and obtained another apartment and entered into a new lease agreement. The newly acquired lease provides for a rental of $135 a month without gas and electricity. They claim gas and electricity amounts to $10 a month. They claim that they made extensive expenditures for the new apartment and that it was caused by reliance on the commitment extended by the defendant. Plaintiffs further assert that relying on the commitment made by the defendant, they ordered a title search for the house they were purchasing and paid the sum of $45 as the net cost of title examination. They further state that closing was to take place during the first part of July, 1963,
*179 It appears from the plaintiffs’ motion papers that just prior to the time of closing, plaintiff, Anthony Zelazny received a letter dated June 28, 1963, which reads as follows:
(Insignia) Federal Housing Administration Approved Lending Institution
PILGRIM FUNDING CORP. Approved F.H.A.— V.A. Lenders 211 Hempstead Turnpike West Hempstead, New York
Mr. Anthony Zelazny 1045 Long Beach Road South Hempstead, New York
June 28, 1963
Re: 41 Larry Drive
Commaek, New York File # 10680
Dear Mr. Zelazny:
Reference is made to our commitment of May 24, 1963, in connection with the above captioned case.
On this commitment we indicated an interest rate of 5%%, however, due to the fact that existing conditions to the Republic Aviation Corporation may necessitate a possible lay-off, we are obliged to change subject commitment to 5%% interest rate.
Kindly indicate your acceptance by signing the enclosed copy.
Very truly yours,
FC/mjl PILGRIM FUNDING CORP.
Walter J. Boyles, Esq. s/ Frank Cammarate
9020 Sutphin Boulevard Frank Cammarate
Jamaica 35, New York President
Plaintiffs contend that after the receipt of the letter Pilgrim Funding Corporation at all times refused to extend a mortgage in accordance with the terms of the commitment.
It is stated by the plaintiffs that the defendant attempted to modify the commitment because there was a possibility that the plaintiff, Anthony Zelazny, may be laid off. It appears that Anthony Zelazny was, at the time the commitment was made, employed by Republic Aviation Corporation.
Based on the above facts, plaintiffs seek summary judgment on the grounds that the commitment letter was a firm contract to lend money and that the defendant breached the contract by the letter dated June 28, 1963. Plaintiffs further request a dismissal of the alleged affirmative defenses of the defendant which are set forth in the answer as follows:
“ No. 6. Breach of Contract.
“No. 7. Misrepresentation.”
It appears that there is set forth in the same answer a purported counterclaim which states in one sentence that “ Defendant demands damages in the sum of $388.50, resulting from *180 plaintiffs’ breach of contract.” Plaintiffs seek dismissal of the counterclaim and affirmative defense for insufficiency because the defendant did not serve a verified answer in response to a verified complaint. A jury demand has been filed and plaintiffs demand summary judgment and request that the matter be set down for assessment of damages.
Defendant opposes the plaintiffs’ motion for summary judgment on the grounds that the commitment letter dated May 24, 1963, was a conditional commitment and not a firm and binding contract inasmuch as it contained the following sentence: “No. 6. Subject to compliance with law, rules, regulations and/or directives of government body and/or agency controlling and/or affecting this transaction and amended rule by our attorneys of all closing papers.”
Defendant further argues that a reduction or change in the plaintiffs’ income any time prior to the closing date became an important factor to the “lending institution.” The “lending institution” referred to is not identified. Defendant also contends that at the time of closing, an affidavit would have to be submitted stating that there was no reduction of the income reported by the plaintiffs in the original application. Defendant argues that the plaintiff, Anthony Zelazny, was discharged from his employment by the Republic Aviation Corporation and that it was this change of credit rating that resulted in the “ Mortgage Bank ” refusing to issue a loan upon the terms and conditions set forth in the commitment letter dated May 24, 1963, issued by Pilgrim Funding Corporation. Defendant’s affidavit states that there was communication on July 5, from the plaintiffs’ attorney requesting a refund of the deposit in connection with the commitment. Defendant says that it outlined for the plaintiffs’ attorney why the mortgage loan was not being given as originally set forth in the commitment and emphasized the change in the credit rating of the plaintiffs. Defendant’s affidavit further states that defendant offered to give plaintiffs a mortgage in the amount of $14,600 at 5%% for 30 years and an additional second mortgage at $1,000 at 5%% for 30 years to run concurrently. Defendant asserts that there would thereby be no financial loss to the plaintiffs by accepting this commitment since, according to the defendant, it was the same as the original offer of commitment set forth in the letter dated May 24, 1963. Defendant says that the attorney for the plaintiffs informed the defendant that the plaintiffs were not interested in any further financing since Anthony Zelazny lost his job and was in no position to undertake the burden of the house. It appears that thereafter no closing date was arranged. *181 With respect to the title search, defendant says in the opposing affidavit that at no time were the plaintiffs authorized to make any application for a fee search inasmuch as it is the policy of the defendant to order the mortgage searches from the title company that is approved by the “lending institution.” Defendant requests denial of the motion on the grounds that there are issues of fact to be resolved on a trial and that there is no ground for striking out the affirmative defense and striking out and dismissing the counterclaim. Plaintiffs have submitted a reply affidavit which, in effect, attempts to negate all of the matter set forth in the defendant’s answering affidavit.
A commitment letter to a prospective borrower constitutes a contract and one who has suffered damage as a result of a breach of such contract may recover damages for the breach thereof. (Avalon Constr. Co. v. Kirch Holding Co., 256 N. Y. 137.) Furthermore, the aggrieved party may recover special damages which an inability to obtain the money under the peculiar circumstances of his case has actually caused him. Such consequential damages are recoverable if the lender knew of facts making a greater loss probable. (5 Williston, Contracts [Eev. ed.], § 1411; Bond St. Knitters v. Peninsula Nat. Bank, 266 App. Div. 503.) “ It is, of course, the general rule that if a party seeks to recover damages which are not the necessary result of the act complained of, such damages must be specified in the pleading with some degree of particularity in order to prevent surprise.” (Steinberg Press v. Charles Henry Pubs., 68 N. Y. S. 2d 793, 796.) The facts of the case indicate that a contract was entered into between the plaintiff, Anthony Zelazny, and the defendant, Pilgrim Funding Corporation, which bound defendant to make the loan to plaintiffs under the terms set forth therein. The court cannot agree with defendant’s contention that the contract was not binding and was subject to approval by some other lending institution, since the commitment does not refer to any .such other lending institution, but purports to be a contract between the defendant as lender and the plaintiffs as borrower. The provision of the letter of commitment making the loan subject to the approval of all closing papers ‘ ‘ by our attorneys ’ ’ indicates further the understanding that the defendant, itself, was to lend the money.
The contract to lend money contained in the form of the commitment letter dated May 24, 1963, contains no clause making a change of employment, income, financial status or credit rating a condition of the granting, rejecting or modifying of the $15,700 mortgage loan. Despite this, defendant increased the interest rate from 5%% to 5%% because of a possible layoff *182 at Republic Aviation Corporation, where plaintiff, Anthony Zelazny was employed. This, the defendant cannot do. “A newly acquired status by a contracting party, which status, by its nature, may or even should prohibit performance of the contract entered into, but which actually has not interfered up to that time, may not form the basis for the other party’s assuming that the contract has been violated, terminated, cancelled or dissolved. There should be more than a possibility or probability of prevention of performance. There must be concrete interference. (Edgecomb v. Buckhout, 146 N. Y. 332.) ” (Havens v. Rochester Ropes, 179 Misc. 889, 891, affd. 266 App. Div. 672.) That a change in employment status appears imminent does not justify the defendant’s modification of the terms of the contract. The interest rate is an important part of a contract to lend money. The demand by defendant that such an essential change in the contract be made, constituted a breach. (Allen v. Hurum, 220 App. Div. 273, 275.)
Defendant’s contention that an affidavit had to be submitted to a lending institution stating that there was no change in plaintiffs’ income, fails, as does the argument that the change of credit rating “resulted in the Mortgage Bank refusing to issue a loan upon the terms and conditions set forth in the commitment letter dated May 24, 1963, issued by The Pilgriim Funding Corp.” If there was another lending institution involved, the contract does not indicate it. If the contract was subject to a continuing credit check it does not state it.
The provision in the commitment letter making the contract subject to compliance with laws, rules, regulations and/or directives of a government body and/or agency controlling and/or affecting the transaction is clear in its meaning. This specifically refers to government body and/or agency of a government and not to any other lending institution. Furthermore, if we strain to stretch the language of this provision we find nevertheless that there was no other lending institution mentioned in the contract to either control or affect the contract to lend the purchase money. “ Agency ”, can refer to nothing but a government agency.
The condition set forth in the commitment making the loan subject to “ approval by our attorneys of all closing papers ”, refers to “ closing papers,” that is those papers necessary to effectuate the transfer of title to the plaintiffs as provided by the contract of sale. It does not mean subject to approval of credit by the attorneys. If it was defendant’s intention to so provide defendant could have done so. Letters of commitment *183 containing such a provision are not rare and are usual where such is the agreement between the borrower and lender.
Defendant sought to relieve itself from the provisions of the commitment first by changing the terms of the contract from 5%% interest rate on the proposed mortgage to a 5%% interest rate. Thereafter, defendant sought to impose upon the plaintiffs an arrangement whereby plaintiffs would become obligated under two proposed mortgages, a first mortgage in the amount of $14,700 at 5%% for 30 years and a second 30-year mortgage of $1,000 at 5%% to run concurrently with the first mortgage. Plaintiffs deny any such proposal. In any event whether such proposal was made is of no consequence inasmuch as the court concludes that a first and second mortgage is not the same as one mortgage. Moreover the total of the twu proposed mortgages would amount to $100 less than the original $15,700 commitment.
The court finds that the letter of June 28, 1963, changing the interest rate from 5%% to 5%% constituted a breach of the contract to make the loan. Under the circumstances: ‘ ‘ The law did not charge [the plaintiffs] with a duty to make such an experiment again.” (Canadian Ind. Alcohol Co. v. Dunbar Molasses Co., 258 N. Y. 194, 201.)
Defendant’s assertion in the opposing papers on this motion, that after an unsuccessful attempt to obtain a higher interest rate, the attorney for the plaintiffs informed the defendant that plaintiffs were not interested in any further financing in no way strengthens defendant’s position. Defendant had breached the contract. Any attempt on the part of plaintiffs’ attorney to change, modify or discharge the contract was invalid for lack of consideration unless such change, modification or discharge was in writing (Personal Property Law, §.33, subd. 2).
The plaintiffs complied with all the terms and conditions of the contract required of them up to the point of defendant’s breach. Plaintiff, Anthony Zelazny, received the commitment letter, he signed his acceptance and he returned the $100 within the 10-day period as required. Since the defendant refused to comply with the contract the plaintiffs were not required to perform the futile act of appearing at the closing of title when they were advised that the defendant would not come forth with the mortgage money under the terms and conditions originally agreed upon. While the issue has not been specifically raised by the parties, the court finds that although the commitment letter was not addressed to plaintiff Carol Mary Zelazny, nevertheless, she along with her husband Anthony Zelazny is entitled to summary judgment in this action. ‘ ‘ A promise made to a *184 husband by a third party for the benefit of the wife can be enforced by the latter ” (Bouton v. Welch, 170 N. Y. 554, 557). (See, also, Buchanan v. Tilden, 158 N. Y. 109; Seaver v. Ransom, 224 N. Y. 233; 2 New York Law of Contracts, § 772.)
The plaintiffs’ motion for summary judgment is granted.
With respect to the plaintiffs’ motion to strike out the affirmative defense, the court finds that on the granting of summary judgment to the plaintiffs affirmative defenses are stricken. There appears to be no breach of contract on the part of the plaintiffs and there are no evidentiary facts set forth to indicate any misrepresentation by the plaintiffs. The counterclaim which reads: “ Defendant demands damages in the sum of $388.50 resulting from plaintiffs’ breach of contract ”, is found insufficient and is dismissed.