Daniel R. MURPHY and Susan Murphy, Plaintiffs-Appellants,

v.

EMPIRE OF AMERICA, FSA, Defendant-Appellee.

No. 194, Docket 84–7454.

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1984.

Decided Oct. 12, 1984.

Richard A. Dollinger, Rochester, N.Y. (Kevin S. Cooman, Greisberger, Zicari, McConville, Cooman & Morin, P.C., Rochester, N.Y., of counsel) for plaintiffs-appellants.

Jeremiah J. McCarthy, Buffalo, N.Y. (Moot & Sprague, Buffalo, N.Y., of counsel), for defendant-appellee.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

Daniel R. Murphy and Susan Murphy appeal from an order of the Western District of New York entered by Judge Michael A. Telesca, 583 F.Supp. 1563, granting the motion of defendant Empire of America, FSA ("Empire") for summary judgment dismissing their action under the Truth-In-Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* The Murphys sought enforcement of their purported rescission of their agreement with Empire for a loan of $27,000 to them, reimbursement of costs and fees paid in anticipation of the consummation of the transaction, a civil statutory

penalty, and reasonable attorney's fees. *See* 15 U.S.C. §§ 1635(b), 1640. We affirm.

In the fall of 1982 the Murphys applied to Empire for a second mortgage on their home in Webster, New York, paying a $126 appraisal fee. On November 15, 1982, Empire, after reviewing the application, issued to them a commitment letter for a $27,000 loan at a 15½% interest rate, to be secured by a second mortgage on the premises. The letter provided that upon the Murphy's execution and return of the letter before November 24, 1982, together with their payment of a $715 commitment fee, the commitment letter would constitute a contract, to be interpreted according to New York law, for a loan to be closed on or before December 31, 1982. In the event that the loan should not be closed the Murphys would be liable for any damages suffered by Empire. The Murphys executed the commitment letter and returned it with their $715 commitment fee to Empire on or about November 18, 1982.

On November 26, 1982, Empire furnished to the Murphys a notice of their right to cancel the transaction within three business days from the latest of (1) the date of the transaction, which was November 18, 1982, or (2) the date they received their Truth-In-Lending disclosure, which was on or before November 18, 1982, or (3) the date they received the notice of their right to cancel, which was on or before November 30, 1982. The bank's letter notice gave the Murphys the option of signing their names on signature lines under a heading "I WISH TO CANCEL" or under a statement to the effect that each "acknowledges and affirms that each of us have elected not to cancel the transaction to which the annexed Notice relates." On November 30, 1982, the Murphys elected *not* to cancel the transaction by signing beneath the latter statement and delivering it to Empire.

By letter dated December 23, 1982, Daniel Murphy advised Empire that he was being delayed in obtaining documentation needed to close "the second mortgage that we have committed to with your bank" and asked for an extension past the December

31, 1982 closing deadline. By letter to the bank dated January 31, 1983, however, the Murphys, who had apparently had a change of mind, purported unilaterally to "rescind and cancel the transaction with you for a second mortgage," stating that the transaction had not yet taken place. The letter referred to Truth in Lending Regulation 226.23 and requested reimbursement of $1,132 in costs. Empire refused to provide the reimbursement demanded within 20 days of its receipt of the rescission notice.

On January 31, 1984, the Murphys commenced the present action in the New York State Supreme Court, County of Monroe, from which it was removed by Empire to the Western District of New York. Their complaint alleges that under TILA, § 125(a), 15 U.S.C. § 1635(a), they had the right to rescind the transaction because there had not been a "consummation" of it as that term is used in TILA and is defined in Regulation Z, 21 C.F.R. § 226.23(d)(2), promulgated by the Board of Governors of the Federal Reserve System. Judge Telesca held that consummation of the transaction had occurred at the time when the commitment contract was executed and delivered to Empire by the Murphys (i.e., on November 18, 1982), rendering ineffective their January 31, 1983, purported rescission or cancellation, which was not executed until more than three business days after both the execution and delivery of the commitment and their receipt of the disclosure and cancellation materials the TILA requires.

### DISCUSSION

Section 125(a) of TILA, 15 U.S.C. § 1635(a), provides in pertinent part:

"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section ... whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so."

The purpose of the statute is to protect the credit consumer by giving him, in addition to his right of full disclosure, a short period (3 days after the later of the consummation of the transaction or the receipt of the required disclosure and cancellation materials) within which to change his mind and be relieved of the obligation to which he has bound himself.

■ Congress did not define the term "consummation of the transaction" as used in § 125(a). However, it delegated to the Board of Governors of the Federal Reserve System the authority to promulgate regulations that would implement the legislation. *See* TILA § 105(a), 15 U.S.C. § 1604(a). "[A]bsent some obvious repugnance to the statute, the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation." *Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 2273, 68 L.Ed.2d 783 (1981). Indeed, "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive ...." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980).

"Consummation" is defined in Regulation Z (the provisions of Part 226 of Title 12 of the C.F.R. are commonly known as Regulation Z) as "the time that a consumer becomes contractually obligated on a credit transaction."[1] The Official Staff Interpretation of this definition notes:

---

1. 12 C.F.R. § 226.2(a)(13). Prior to 1982 Regulation Z provided that "consummation" occurred when "a contractual relationship was created between a creditor and a customer ... irrespective of the time of performance of either party." 12 C.F.R. § 226.2(kk) (1980). The 1982 change of this language to provide that "consummation" occurs when "a consumer becomes contractually obligated on a credit transaction," 12 C.F.R. § 226.2(a)(13), did not, as appellants

"1. *State law governs.* When a contractual obligation on the consumer's part is created is a matter to be determined under applicable law; Regulation Z does not make this determination. A contractual commitment agreement, for example, that under applicable law binds the consumer to the credit terms would be consummation." Regulation Z, Supplement I, Commentary 2(a)(13) (at p. 684 of 12 C.F.R. Parts 200–299 (1984)).

Under New York law the consumer's acceptance of a lender's commitment offer constitutes a binding contract. For such a commitment contract to exist it is only necessary that the borrower and lender concur as to the essential terms of the future mortgage transaction. *See Avalon Construction Corp. v. Kirch Holding Co.,* 256 N.Y. 137, 142, 175 N.E. 651, 652 (1931); *Zelazny v. Pilgrim Funding Corp.,* 41 Misc.2d 176, 181, 244 N.Y.S.2d 810, 816 (Nassau County, 1963) ("A commitment letter to a prospective borrower constitutes a contract and one who has suffered damage as a result of a breach of such contract may recover damages for the breach thereof."); *Dubin Weston, Inc. v. Louis Capano & Sons, Inc.,* 394 F.Supp. 146, 155 (D.C. Del.1975).

Indeed, one New York appellate court, faced with substantially the question before us, held in *Gramatan Home Investors Corp. v. Mack,* 70 A.D.2d 288, 421 N.Y.S.2d 124 (3d Dept.1979), that a consumer credit transaction was "consummated," as that term is used in 15 U.S.C. § 1635(a), upon execution of the contract for extension of credit rather than upon the later execution of the note and mortgage that were the subject of the transaction. In rejecting the borrower's claim that the transaction had not been consummated until the execution of the note and mortgage the court stated:

"A contractual relationship is created between creditor and customer when the former proffers credit and the latter accepts irrespective of the time of performance of the contract itself. Since both parties agree that defendant had entered into a contractual relationship with [the lender] on January 10, 1974 ... the transaction was complete as of that date...." *Id.,* 70 A.D.2d at 291–92, 421 N.Y.S.2d at 126.

Appellant's contention that the "consummation of the transaction" does not occur until it is closed by execution of a note and mortgage confuses the term "consummation" with the parties' "performance" of the obligations that are the subject of the transaction. The transaction is consummated when the lender and borrower sign a contract obligating them, respectively, to lend and to borrow the funds. The signing of the contract is the event of central significance. Thereafter, unless the borrower exercises his three-day statutory privilege to rescind, the lender is bound to lend him the funds and the borrower is bound to borrow the money. If the lender refuses to provide the loan it can be held liable to the borrower for damages. Conversely, if the borrower decides not to use the credit he may be liable to the lender for the interest on the loan.

Application of these principles mandates dismissal of appellants' claim. By executing and returning the commitment letter to Empire on or about November 18, 1983, along with the non-refundable commitment fee of $715, the Murphys obligated themselves to accept the loan and conform to the terms of the commitment contract, subject only to their right under § 125(a) of TILA to rescind. Their failure to rescind within the statutorily permissible three-day period precludes their doing so. Their purported January 31, 1983 rescission therefore was a nullity and is not entitled to enforcement.

---

argue, postpone consummation to "the time the loan is made and the consumer agrees to repay the debt." (Appellants' Br. 18). As the Official Staff Interpretation makes clear, the change was designed to insure that consummation would occur only when contractual obligations bound the parties to the credit terms, not when there had merely been some investment in the transaction, such as the making of a non-refundable deposit. Regulation Z, Supplement I, Commentary 2(a)(13); 12 C.F.R. Parts 200–299, at 684 (1984).

■ Appellants' contention that the legislative history of § 125(a) of TILA, 15 U.S.C. § 1635(a), supports their interpretation of the statute as not intending the "consummation of the transaction" to occur until the closing of the loan and mortgage must be rejected. Although Congresswoman Sullivan, during a House debate on a TILA conference report, stated that § 125(a) gave the "buyer ... three days grace ... after he was told that he was signing a mortgage," 114 Cong.Rec. 14398 (1968), her remark was immediately controverted by Congressman Cahill, an advocate of TILA, who stated that there was a need to "establish some legislative history" because, in his words, "I do not read the amendment as the gentlewoman from Missouri [Congresswoman Sullivan] reads it. I think there are serious questions as to interpretation." *Id.* In any event, such isolated remarks are entitled to little or no weight, particularly when they are unclear or conflict with one another, as distinguished from a legislative committee's formal report on its enactment, *see Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979), or when there is no official legislative history on the enactment, *see, e.g., Davis v. Federal Deposit Ins. Corp.,* 620 F.2d 489, 491 (5th Cir.1980) ("the legislative history [of TILA] is virtually nonexistent"); *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 651 (9th Cir.1974) (noting "the absence of congressional history"). No committee report exists with reference to TILA, probably for the reason that the conference version of the bill, which differed substantially from the provisions initially passed by the House, was adopted by the House without debate. 114 Cong.Rec. 14397 (1968). The absence of any legislative history was noted by several members of the House, including Congressman Poff, who stated:

"[O]ne of the essential components of the legislative process often is the writing of legislative history. Courts which undertake to interpret congressional intent in future years will find a want of true legislative history when they read the *Congressional Record* for today.

"I believe it is regrettable that the procedure which was followed left no Member an opportunity to express what he conceived to be the purpose and effect of the new language which was written into the truth-in-lending bill by the committee on conference.

"The only opportunity we now have to supply this information is to avail ourselves of the unanimous-consent request which was granted to revise and extend our remarks." 114 Cong.Rec. 14397 (1968).

Nor do we find any merit in appellant's argument that the credit consumer's right to rescind is undermined unless it is permitted to be exercised within three days after the closing of the loan and mortgage. The focal point for possible reconsideration by the borrower is when he becomes contractually bound, which normally occurs when he signs the commitment. A right of rescission after closing of the loan could arise only if there had been no prior binding contract between the parties obligating them to extend the credit.

We find no merit in appellants' other arguments. Our holding is not inconsistent with language of § 125(b) of TILA, 15 U.S.C. § 1635(b), to the effect that rescission voids "any security interest given by the obligor." Neither this language nor that of the implementing provisions of § 226.23 of Regulation Z, 12 C.F.R. § 226.-23(d)(1) (1984), implies that a security interest must have been given before the transaction may be rescinded. It merely provides that when a security interest has been given (as would be the case when a note and mortgage are executed without any prior commitment) that interest becomes void upon rescission.

The order of the district court is affirmed.