**SHAWMUT BANK CONNECTICUT, National Association, Plaintiff**

v.

**The Honorable Robert M. GOOGINS, Insurance Commissioner of the State of Connecticut, et al., Defendants.**

**Civil No. 3:94cv146(JBA).**

United States District Court, D. Connecticut.

May 27, 1997.

Thomas J. Groark, Jr., Daniel L. Fitzmaurice, Mitchell R. Harris, Day, Berry & Howard, Hartford, CT, for Shawmut Bank Connecticut, National Association.

Michael J. Gustafson, Halloran & Sage, Hartford, CT, Scott A. Sinder, Arti K. Rai, Ann M. Kappler, Jenner & Block, Washington, DC, for Connecticut Association of Life Underwriters, Professional Insurance Agents of Connecticut, Independent Insurance Agents of Connecticut.

Mark F. Kohler, Attorney General's Office, Public Utility Control, New Britain, CT, John G. Haines, Attorney General's Office, Hartford, CT, for George M. Reider, Jr., John P. Burke.

Gerald M. Noonan, Hartford, CT, for American Bankers Insurance Company of Florida, Connecticut Bankers Association.

Carol Eve Robbins, Comptroller of the Currency, Litigation Division, Washington, DC, for Office of the Comptroller of the Currency.

Chrys D. Lemon, McIntyre Law Firm, Washington, DC, for ABI, Inc.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT
### (DOCS. 34, 39, & 44)

ARTERTON, District Judge.

This action concerns the rights of a national bank to sell insurance under 12 U.S.C. § 92, which permits banks in towns with populations under 5000 ("places under 5000") to act as insurance agents. Plaintiff Shawmut Bank brought this suit for declaratory and injunctive relief to prevent the defendant insurance commissioner Robert M. Googins from enforcing state laws against Shawmut that limit the ability of banks to sell insurance. Googins brought a counterclaim seeking declaratory judgment that § 92 permits banks to sell insurance only within the geographic boundaries of a place under 5000. Similar counterclaims have been brought by the intervenor-defendants, who include state banking commissioner Ralph Shulansky, the Connecticut Association of Life Underwriters, the Professional Insurance Agents of Connecticut, and the Independent Insurance Agents of Connecticut. Shawmut, the state defendants, and the insurer defendants have offered cross motions for summary judgment.

While the motions for summary judgment were still pending, the Supreme Court ruled that state banking and insurance regulations were preempted by § 92, which effectively resolved Shawmut's underlying claim. *See Barnett Bank of Marion County, N.A. v. Nelson,* — U.S. ——, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). However, the Supreme Court did not address the geographic scope of insurance sales permitted under § 92. Accordingly, the Court granted plaintiff's motion for summary judgment, and denied defendants' cross-motions for summary judgment, except insofar as these motions concerned the geographic scope issue. The Court requested additional briefing on this issue from all of the parties. Additionally, the Office of the Comptroller of the Currency ("OCC") and the American Bankers Association ("ABA") offered amicus briefs supporting Shawmut's interpretation of § 92.

### Background

The parties are in agreement that there are no disputes of material fact in this case. Shawmut is a national bank that operates one of its branches in Chester, Connecticut, a place under 5000. On November 17, 1993, Shawmut acquired a general insurance agency, Insurance Associates of New Haven. Upon acquiring this agency, Shawmut moved the agency's place of business to its Chester branch office. Shawmut now seeks to sell insurance under § 92 to customers who are both within and outside of Chester. It is not clear, however, how Shawmut intends to market its new insurance business and, specifically, whether solicitations or sales will be conducted outside of the Chester branch.

Defendants' counterclaims ask the Court to address two distinct questions: first, *to whom* may Shawmut properly sell insurance (i.e., is Shawmut limited to selling to residents of Chester); and, second, *where* may Shawmut sell insurance (i.e., to what extent may Shawmut conduct its insurance sales business in locations outside of Chester)? Shawmut argues that the Court may only properly address the first question, because Shawmut has not indicated what sorts of sales activities, if any, it intends to conduct outside of the Chester branch. Shawmut

contends that any Court decision addressed to the second question would be an impermissible advisory opinion. At oral argument, defendants conceded that the Court may only address the "to whom" question in the present suit.

### Discussion

■ Section 92 provides as follows:

[A]ny [national bank] located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company....

In interpreting this provision, the Court need not begin with a blank slate. The OCC, the agency expressly authorized to implement § 92, adopted the position in a 1986 interpretive letter that § 92 does not limit insurance sales to people within the place of 5000. The validity of the OCC's interpretation of the statute in this regard has been upheld by both circuit courts to consider the issue. *See NBD Bank, N.A. v. Bennett,* 67 F.3d 629 (7th Cir.1995); *Independent Insurance Agents of America, Inc. v. Ludwig,* 997 F.2d 958 (D.C.Cir.1993). Indeed, the Seventh Circuit's holding in *NBD* reversed what appears to be the only judicial decision rejecting the OCC's interpretation of the geographic scope of § 92.

With respect to banking laws, the Supreme Court has held that "courts should give great weight to any reasonable [statutory] construction" offered by the OCC. *NationsBank of North Carolina, N.A. v. Variable Annuity Life Insurance Co.,* 513 U.S. 251, 256, 115 S.Ct. 810, 813, 130 L.Ed.2d 740 (1995) [hereinafter *VALIC* ] (citation omitted). In considering the validity of an OCC interpretation, the Court should employ the two-prong analysis set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83,

81 L.Ed.2d 694 (1984). Specifically, the Court should "inquire first whether the intent of Congress is clear as to the precise question at issue. If so, that is the end of the matter. But if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. If the administrator's reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment controlling weight." *VALIC*, 513 U.S. at 257, 115 S.Ct. at 813–14 (citations and internal quotation marks omitted).

Defendants argue that the OCC's interpretation of § 92 is contrary to clear congressional intent. Section 92 plainly fails to establish an express limitation on the permissible location of insurance customers. However, defendants contend that congressional intent is manifest in the statute's legislative history. Specifically, defendants rely on a 1916 letter that was submitted to Congress by Comptroller of the Currency John Skelton Williams along with the proposal that eventually became § 92. In relevant part, this letter reads as follows:

> [Since 1900, of 3,084 small national banks, 438] have either failed or gone into liquidation.... [T]here are many banks located in [small towns] ... where the small deposits which the banks receive may make it somewhat difficult [to earn] ... a satisfactory return.... For some time I have been giving careful consideration to the question as to how the powers of these small national banks might be enlarged so as to provide them with additional sources

of revenue and place them in a position where they could better compete with local State banks and trust companies which are sometimes authorized under the law to do a class of business not strictly that of commercial banking.... My investigations lead me respectfully to recommend to Congress an amendment to the national-bank act by which national banks located in [small towns] ... may be permitted to act as agents for insurance companies.... It seems desirable from the standpoint of public policy and banking efficiency that this authority should be limited to banks in small communities. This additional income will strengthen them and increase their ability to make a fair return.... [I]n many small places, the amount of insurance policies written ... is not sufficient to take up the entire time of an insurance broker, and the bank is not therefore likely to trespass upon outside business naturally belonging to others. I think it would be unwise and therefore undesirable to confer this privilege generally upon banks in large cities where the legitimate business of banking affords ample scope for the energies of trained and expert bankers.... I inclose ... a draft ... designed to empower national banks located in [small] towns ... under such regulations and restrictions as may from time to time be approved and promulgated by the Comptroller of the Currency, to act as agents for the placing of insurance policies.

53 Cong. Rec. 11001 (1916). Defendants argue that this letter provides compelling evidence of a congressional intent that § 92 be interpreted only to permit sales of insurance to residents of a place under 5000.[1]

---

**1.** Defendants further contend that *Ludwig* was wrongly decided because the D.C. Circuit concluded that only "limited deference" was due the Williams letter as a statement of legislative intent. 997 F.2d at 961. Defendants maintain that the Williams letter, although not a formal committee report, is in fact an authoritative statement of Congress's intentions in enacting § 92, and that this Court must treat it as such in light of the Second Circuit's reliance on the letter in another context. *See American Land Title Association v. Clarke*, 968 F.2d 150, 155–56 (2d Cir.1992) [hereinafter *ALTA* ]. However, because the Court disagrees with defendants as to the clarity with which the Williams letter speaks to

the present issue, the Court need not determine whether *Ludwig* and *ALTA* are in conflict as to the degree of deference properly due the Williams letter. The Court further notes that it is not clear that the D.C. Circuit would have reached any different result in *Ludwig* even if greater deference had been accorded the Williams letter. The D.C. Circuit found that the "crucial step" away from the purported legislative intent was the decision to allow small-town branches of large national banks to sell insurance. 997 F.2d at 961. The court did not suggest that the Williams letter addresses the question of to whom such banks may sell.

As the D.C. Circuit commented with respect to the Williams letter, a billion-dollar bank like Shawmut is probably "not the sort of struggling 'country bank' whose plight troubled Mr. Williams." *See Ludwig,* 997 F.2d at 960. However, the narrow scope of the present case must be borne in mind. The issue presented is not whether large national banks with branches in small towns may sell insurance, but, granting that Shawmut may sell insurance through its Chester branch, to whom it may sell. In 1963, the OCC permitted small-town branches, in addition to small-town banks, to sell insurance under § 92. A challenge to this interpretation may now be barred by laches. *Id.* at 961. In any event, defendants do not challenge this aspect of the OCC's interpretation. Rather, defendants merely question where Shawmut's customers may permissibly reside. As to this precise issue. the Williams letter seems to provide no clear answer.

Defendants focus particularly on the Comptroller's statement that "in many small places, the amount of insurance policies written . . . is not sufficient to take up the entire time of an insurance broker, and the bank is not therefore likely to trespass upon outside business naturally belonging to others." However, as Shawmut notes, it is unclear to what extent this sentence reflects a *desire* to limit sales to "small places," and to what extent it merely states an *expectation* that sales will be so limited, which would be understandable in an era of more limited communications and transportation capabilities. Moreover, reading the letter in its entirety, it is apparent that effects on "outside business" were of no more than passing concern. As the Supreme Court observed, Williams' statement "primarily focuses upon small town national banks' need for added revenue—an objective met by a broad insurance-selling authority. . . ." *Barnett Bank,* —— U.S. at ——, 116 S.Ct. at 1110. In light of this clear overriding objective, the Court is reluctant to read into the Williams letter any limits on insurance-selling authority other than those expressly stated.

Of course, legislative intent may be divined by reference to other sources besides legislative history. Thus, the parties rely on a variety of other provisions of banking law in support of their respective interpretations of the insurance-selling powers set forth in § 92. Shawmut points to another provision in § 92 that permitted banks in small towns to "act as the broker or agent for others in making or procuring loans on real estate located within one hundred miles of the place [under 5000] in which said bank may be located." This provision, repealed in 1982, was part of the original 1916 enactment, and, according to Shawmut, indicates that "Congress knew how to impose geographic restrictions [of the sort urged by defendants] when it wanted to." *See Ludwig,* 997 F.2d at 960 (quoting district-court decision). As the Seventh Circuit stated in *NBD Bank,* the history of the loan brokerage provision "shows that the Congress of 1916 understood that national banks could transact business without regard to their customers' locations, unless the law said otherwise. When authorizing loan brokerage Congress said otherwise; when authorizing insurance agency it did not say otherwise. Section 92 therefore permits small-town banks to act as insurance agents without regard to the location of customers." 67 F.3d at 632.

In support of the same conclusion, amicus ABA emphasizes the fact that banking statutes impose no limitations on the location of a national bank's loan and deposit customers. The ABA suggests that it would be anomalous to find in § 92 a limitation on the location of a bank's insurance customers. The Seventh Circuit adopted such reasoning in *NBD Bank. Id.* at 631–32. The court noted that although national banks may not generally branch across state lines, there can be no doubt that a national bank in one state is permitted to take deposits from, and extend credit to, residents of other states. *Id.; see also Marquette Nat'l Bank of Minneapolis v. First of Omaha Service Corp.,* 439 U.S. 299, 310–11, 99 S.Ct. 540, 546–47, 58 L.Ed.2d 534 (1978). Thus, the geographic limits in other areas of banking law focus solely on the location of the bank, not the location of the customer. Indeed, the Supreme Court has ruled that the law governing the interest rates chargeable by a national bank is the law of the state in which the bank is located, rather than the state in which the customer

is located. *Marquette Nat'l Bank,* 439 U.S. at 318–19, 99 S.Ct. at 550–51.

█ The insurer defendants, for their part, rely on 12 U.S.C. § 81, which states, "The general business of each national bank shall be transacted in the place specified in its organization certificate and in [its] branch or branches." Of course, this provision does not preclude a national bank from serving out-of-state customers; in such cases, the place where the business is transacted is understood to be the location of the bank. However, defendants contend that banking law and insurance law differ in this regard: under general principles of insurance law, one "acts as an insurance agent" in the place where the insured risk is located, rather than the place where the insurance agent is located. Interpolating this principle into § 81, defendants contend that the statute permits a bank to "act as an insurance agent" only in certain limited locations, meaning that the bank may only insure risks located in those authorized places. Defendants further argue that the limitations set forth in § 81 were understood by Congress in 1916 and thus obviated the need for express geographical limitations on the location of customers in § 92.

Defendants' argument suffers various shortcomings. First, by its terms, § 81 applies only to the "general business" of a bank, not all business of the bank. The Supreme Court has thus established that § 81 concerns only "core banking functions." *See Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 403–04, 107 S.Ct. 750, 759–60, 93 L.Ed.2d 757 (1987). Thus, the Court has held that running a discount securities brokerage is not part of a bank's "general business" and is therefore not subject to the limitations of § 81. *Id.* Defendants have not identified any authority indicating that insurance sales pursuant to § 92 are any more a "core banking function" than are discount brokerage services. Second, § 81 imposes limits only on where "business" is "transacted," not on the place in which a bank may "act as an insurance agent." The Court sees no reason why "transacting business" should be read to encompass "acting as an insurance agent," particularly where defendants themselves have posited that "acting as an insurance agent" is a term of art in insurance law. Third, defendants have provided no basis for assuming that the congressional framers of federal banking law ever contemplated the interpolation of principles of state insurance law into § 81, which on its face has nothing to do with insurance. Indeed, even with respect to § 92, which expressly concerns insurance sales, the Supreme Court has instructed that "federal banking law does not plainly require automatic reference to state law." *VALIC,* 513 U.S. at 262, 115 S.Ct. at 816. The Court thus finds defendants' interpretation of § 81 to be less than persuasive, and sees no reason why sections 81 and 92 should be read together in the manner defendants urge.

Lastly, defendants point to the provision in § 92 mandating that banks act as insurance agents only for insurance companies "authorized by the authorities of the State in which said bank is located to do business in said State." Defendants argue that this provision indicates that Congress contemplated only in-state sales of insurance. While this may be true, it is not clear that such an in-state restriction would be relevant to the question of whether a bank may sell insurance only to residents of the town in which the bank is located. The Court does not understand the present action to address the permissibility of sales to out-of-staters, but only the permissibility of sales to out-of-towners. Indeed, given the limited record as to Shawmut's intentions with respect to its insurance sales activities, it is not clear that there is a case or controversy at present with respect to sales to out-of-staters.

In sum, defendants' most persuasive evidence of congressional intent may be a single sentence in Comptroller Williams' letter. However, this sentence, which is not without its own ambiguity, must be read in light of the overall focus of the letter; the precise language that Congress chose to use in § 92, including the express geographical limitations with respect to real-estate brokerage services; and the fact that geographical restrictions in banking law are generally applied to the location of the bank, not the residency of its customers. Weighing all of

these considerations, the Court cannot conclude that there is a clear congressional intent to limit insurance sales under § 92 to residents of the place under 5000. At most, defendants have shown congressional intent as to this issue to be ambiguous. Under the second prong of the *Chevron* test, then, the question becomes whether OCC's interpretation of § 92 is "reasonable." In light of the broad congressional intent to increase revenues of national bank branches in places under 5000, *see Barnett Bank*, —— U.S. at ——, 116 S.Ct. at 1110, as well as the other indications of congressional intent set forth above, the Court finds OCC's interpretation to be at least a reasonable one. Indeed, the court does not understand the defendants to seriously contest the reasonability of OCC's interpretation.

■ Defendants do, however, argue that OCC's interpretation is owed no deference because it does not represent a longstanding, clearly articulated policy. Defendants seem to suggest that the *Chevron* analysis is not appropriate for an agency decision promulgated in an interpretive letter, as was the OCC decision at issue. However, in *VALIC*, the Supreme Court plainly applied *Chevron* analysis to an OCC interpretative letter, and defendants make no attempt to distinguish the cases.

Defendants also seek to undercut the authority of the OCC interpretation by arguing that it is inconsistent with six earlier interpretive letters. However, this argument was squarely rejected by both the *Ludwig* and *NBD Bank* courts. *See NBD Bank*, 67 F.3d at 632 ("Delegation implies the power to reexamine and change one's views...."); *Ludwig*, 997 F.2d at 962 (prior letters "have no effect as precedents"; OCC never set forth contrary interpretation of § 92 "in a binding statement"). There is no dispute that the OCC has consistently espoused its current position on geographic scope for more than ten years. Moreover, there is considerable doubt whether the six letters cited by defendants actually stand for a contrary position. Only three of the letters appear relevant to the present issue. The applicable language from these letters is as follows:

Letter of July 17, 1970 (Ex. 2): "I do not think it would be feasible from the administrative point of view to lay down, as a general rule, a specific geographic limitation [on insurance sales under § 92] such as within the same city, county, etc.... I think the only generalization that can safely be made is that the statute does not authorize a service area for the insurance activity which is significantly greater than that of the banking activity of the owner bank."

Letter of December 29, 1978 (Ex. 3): "There are no geographical, operational, or other restrictions contained in I.R. 7.7100 [the OCC ruling in which § 92 was interpreted to apply to branch offices] on who the [insurance] agency may sell to or what kinds of insurance the agency may sell. However, [the 1970 letter quoted above] stated that 'the statute (12 U.S.C. § 92) does not authorize a service area for the insurance activity which is significantly greater that of the banking activity of the owner bank.'"

Letter of June 19, 1986 (Ex. 7): Defines legislative purpose of § 92 as "to avail citizens of towns too small to support an insurance broker the benefits of insurance policies as well as to allow banks in these locales a further source of revenue." Notes that the OCC does not "impose any restrictions on the form of operation, the types of insurance that may be sold, or the customers who may be offered insurance."

If anything, these letters seem to reject defendants' whole approach to § 92. While the letters suggest that a bank's power to sell insurance should not be geographically unlimited, OCC has consistently abjured express, bright-line limitations on who a bank's customers may be. Defendants have thus failed to demonstrate that OCC has ever taken the position that customers must be limited to those living within the borders of the place under 5000. Accordingly, the Court finds no merit to defendants' contention that OCC's interpretation of § 92 is unclear or inconsistent.

*Conclusion*

For the foregoing reasons, plaintiff Shawmut's Motion for Summary Judgment (Doc.

34) is GRANTED, and defendants' Motions for Summary Judgment (Docs. 39 & 44) are DENIED.

IT IS SO ORDERED.